UNITED STATES of America and Norman Smoller, Revenue Agent, Internal Revenue Service, Petitioners,

v.

TOYOTA MOTOR CORPORATION, Mr. Isao Makino, Senior Managing Director of Toyota Motor Corporation, Toyota Motor Sales U.S.A., Inc., Mr. Isao Makino, president of Toyota Motor Sales U.S.A., Inc. and Toyota Motor Sales U.S.A., Inc., as agent or department of Toyota Motor Corporation, Toyota Motor Co., Ltd., and Toyota Motor Sales Co., Ltd., Respondents.

No. CV 83–0687–CHH.

United States District Court, C.D. California.

June 21, 1983.

See also, D.C., 561 F.Supp. 354.

Stephen S. Trott, U.S. Atty., Charles H. Magnuson, Asst. U.S. Atty., Chief, Tax Div., Los Angeles, Cal., Daniel F. Ross, Trial Attorney, Tax Div., Dept. of Justice, Washington, D.C., for petitioners.

Gibson, Dunn & Crutcher, Robert S. Warren, James G. Phillipp, Phillip L. Bosl, Los Angeles, Cal., for respondents Toyota Motor Sales, U.S.A., Inc. and Mr. Isao Makino.

Musick, Peeler & Garrett, Bruce A. Bevan, Jr., P.C., William McD. Miller, III, Los Angeles, Cal., Miller & Chevalier, Chartered, John S. Nolan, Jay L. Carlson, Mark L. Evans, Homer E. Moyer, Jr., Washington, D.C., for respondent Toyota Motor Corp.

### ORDER GRANTING IN PART AND DENYING IN PART PETITION TO ENFORCE IRS SUMMONS

CYNTHIA HOLCOMB HALL, District Judge.

This matter is before the Court on a petition to enforce summonses issued by the Internal Revenue Service ("IRS") to the Toyota Motor Corporation, a Japanese corporation ("Toyota Japan"), and its American sales subsidiary, Toyota Motor Sales, Inc. U.S.A. ("Toyota U.S.A."). *See* 26 U.S.C. § 7604. The summonses contain 15 separate requests (see Appendix) for documents and records relating to the sale of Toyota vehicles in the United States and Japan for fiscal years 1975 through 1978, and were issued during the course of an IRS audit of Toyota U.S.A.'s tax liability for those years. The Court has previously determined that it has personal and subject matter jurisdiction over the respondents, that venue is proper, and that service of the enforcement petition was properly effected on all parties. *United States v. Toyota Motor Corp.*, 561 F.Supp. 354 (C.D.Cal.1983).

### I. SERVICE OF SUMMONS

As a threshold matter, respondent Toyota Japan contends that it was never properly served with an IRS summons. Two IRS summonses are in issue here: the first is addressed to "TOYOTA MOTOR SALES U.S.A., INC., Mr. Isao Makino, President of Toyota Motor Sales U.S.A., Inc. and department of Toyota Motor Corporation, Toyota Motor Co., Ltd., and Toyota Motor Sales Co., Ltd."; and the second to "TOYOTA MOTOR CORPORATION and Mr. Isao Makino, Director of Toyota Motor Corporation." Both summonses were personally delivered to Mr. Makino at his office in Torrance, California, where he serves as President of Toyota U.S.A. Mr. Makino also holds the position of Senior Managing Director of Toyota Japan.

Section 7603 of the Internal Revenue Code, 26 U.S.C. § 7603, provides that an IRS summons "shall be served ... by an attested copy delivered in hand to the person to whom it is directed ..." It is undisputed that the summons was served, in hand, to Mr. Makino. The Court is of the opinion that such delivery was sufficient to effect service upon Toyota Japan. As previously noted in this litigation, Toyota U.S.A. may be considered a "managing agent" of Toyota Japan, as that term is used in Federal Rule of Civil Procedure 4(d)(3). Service of the summons "in hand" upon an officer of the managing agent is therefore sufficient to effect service upon the foreign corporation. Moreover, because

Mr. Makino serves as a "representative director" of Toyota Japan, he is empowered, under Japanese law, to perform "all judicial and extra-judicial acts relating to the business of the company." Japanese Commercial Code, art. 78(1), *quoted in* Kitagawa, *Doing Business in Japan,* App. 5A (1982). Given this authority, service of the summons upon Mr. Makino was sufficient to effect service upon Toyota Japan.

## II. COMPLIANCE TO DATE

Respondents contend that they have already provided the IRS with records responsive to a number of the items requested. Specifically, respondents have complied with the requests contained in items 1, 2, 6, 12B, 13, and 14. In addition, respondents assert that they have provided the IRS with all available information in response to Item 7. Petitioner does not contest any of these assertions; accordingly, the Court concludes that respondents have fully complied with these requests.

## III. NON–EXISTENCE OF DOCUMENTS

█ Respondents also contend that the summonses call for, in part, the production of records that do not exist. With respect to items 3, 4, 8, 9, and 12A, respondent Toyota Japan asserts that it no longer maintains cost records on a model-by-model basis. According to the affidavits of respondent's officers, the only cost records for fiscal years 1975 through 1978 still in existence are general ledger and subledger accounts. Because the detailed backup data and supporting records used to create these accounts were discarded in the normal course of business prior to issuance of the IRS summonses, Toyota Japan is unable to provide responsive documents. In addition, respondents state that they cannot comply with specifications 10 and 11, which seek documents describing the factors entering into the determination of transfer prices charged to Toyota U.S.A. by Toyota Japan. Although respondents admit that they possess materials relating to current transfer pricing policy, the documents relevant to

fiscal years 1975 through 1978 were also discarded prior to the issuance of IRS summonses in 1982.

Respondents have properly raised this defense at this stage of the enforcement proceedings. *United States v. Rylander,* —— U.S. ——, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983). This Court cannot compel the production of nonexistent documents. *United States v. Asay,* 614 F.2d 655 (9th Cir.1980). Because the petitioners have not provided any evidence to rebut the respondents' assertions of impossibility, enforcement of the summonses is denied as to items 3, 4, 8, 9, 10, 11, and 12A.

## IV. ITEM 15

█ Item 15 of the summonses requires the respondents to:

Provide all orders, directives, instructions, commands, and regulations issued to Toyota Motor Sales, U.S.A., Inc. by Toyota Motor Co., Ltd., and Toyota Motor Sales Co., Ltd. for each of the fiscal years 1975, 1976, 1977, and 1978.

Section 7603 mandates that an IRS summons describe the documents to be produced "with reasonable certainty." A request for *all* orders, directives, instructions, commands and regulations issued to the subsidiary by its parent corporations does not satisfy this statutory requirement. Item 15 does not describe the records requested with sufficient particularity to enable the respondents to identify which documents are sought. Furthermore, many of the documents encompassed within the scope of this request are irrelevant to the purpose of the IRS audit. Accordingly, this request may not be enforced as presently formulated. *See, e.g., United States v. Ladd,* 471 F.Supp. 1150, 1157–58 (N.D.Texas 1979).

█ Although counsel for the petitioners acknowledged these deficiencies at oral argument, they have failed to suggest any suitable remedies. In their post-trial memorandum of May 5, 1983, petitioners proposed that Item 15 be narrowed to include only the production of orders and directives (1) dictating pricing policies and (2) relating to matters that "affect" pricing. In re-

sponse to this proposal, respondents contend that no orders or directives were ever received that fall within the first category. As for the second category, respondents argue that a subjective judgment would be required as to which documents in their possession might relate to a matter "affecting" the price at which Toyota U.S.A. purchased automobiles during the years in question. These arguments are well taken. Although this Court possesses the power to narrow or modify the scope of an IRS summons, *United States v. Luther,* 481 F.2d 429 (9th Cir.1973), there does not appear to be any practical means of doing so with respect to Item 15. Accordingly, the enforcement petition must be denied with respect to Item 15.

## V. ITEM 5

The final provision of the IRS summons is Item 5, which directs respondents to:

Provide unit selling prices, including the price of spare tire and tools, to Japan dealers for each passenger car model sold during each of the fiscal years 1976, 1977 and 1978.

The Petition for Enforcement, along with the supporting declaration of Petitioner Norman Smoller, satisfy the requirements of *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 245, 13 L.Ed.2d 113 (1964) and *United States v. LaSalle National Bank,* 437 U.S. 298, 318, 98 S.Ct. 2357, 2368, 57 L.Ed.2d 221 (1978). The single issue before the Court is whether enforcement of this summons provision is barred by principles of international law.

■ It is well established that United States courts must follow international law in IRS summons enforcement proceedings. *United States v. Vecto Inc.,* 691 F.2d 1281 (9th Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981). The applicable principles have most recently been articulated by The American Law Institute in the Restatement of the Foreign Relations Law of the United States (Revised) (Tentative Draft No. 3, March 15, 1982). Specifically, section 420(1)(a) of the *Restatement Revised* provides that, where authorized by

domestic law, a court may order a person to produce documents or other information that are "directly relevant, necessary, and material to an ... investigation" conducted by a government agency. In determining whether this test is satisfied, a court must balance five factors:

In issuing an order directing the production of documents or other information located abroad, a court in the United States must take into account the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; in which of the states involved the documents or information originated; the extent to which compliance with the request would undermine important interests of the state where the information is located; and the possibility of alternative means of securing the information.

*Restatement Revised* § 420(1)(c).

■ As a threshold requirement, a summons directed at documents located abroad must meet "a more stringent test of direct relevancy, necessity and materiality than is required for comparable requests for documents or information located in the United States." *Restatement Revised* § 420, Comment a. This standard is satisfied here. The focus of the IRS inquiry is whether an adjustment is required to clearly reflect Toyota U.S.A.'s income. *See* 26 U.S.C. § 482. The price information sought in Item 5 is fundamental to this inquiry. *See* Treas.Reg. § 1.482–2(e)(1), 26 C.F.R. § 1.482–2(e)(1) (1982).

■ Enforcement of Item 5 of the petition is also appropriate in light of the factors articulated in section 420(1)(c) of the *Restatement Revised.* First, the documents and information relating to Toyota Japan's selling prices to Japanese dealers are "important" to the IRS audit. As noted above, a determination of the prices charged Japanese dealers is highly relevant to the IRS investigation. Toyota Japan has made no showing that the information is cumulative of records already produced. *See United States v. Vetco Inc., supra,* 691 F.2d at 1290. Furthermore, the fact that this action was

brought by the government, rather than a private litigant, weighs heavily towards finding a strong American interest in obtaining the information sought. *See id.* at 1289 n. 9; *Restatement Revised* § 420, Reporters' Note 8. Second, the request for selling prices is specific. Item 5 does not suffer from the overbreadth that proved fatal to Item 15. A third factor weighing in favor of enforcement is the unavailability of alternative methods of obtaining the information requested. The IRS has repeatedly attempted to secure information relating to the audit of Toyota U.S.A. through treaty requests. *See* Convention Between the United States of America and Japan for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, 23 U.S.T. 969, T.I.A.S. 7365, art. 26 (1971). In light of the failure of these requests to produce the information sought, it would be futile to insist upon additional Tax Treaty inquiries as an alternative to summons enforcement. The use of letters rogatory has also been proposed as an alternative, but must be rejected. Because the IRS is not a "tribunal," it is not authorized to directly transmit letters rogatory to a foreign court. *See* 28 U.S.C. § 1781. Although respondents argue that an IRS summons can be converted into a letter rogatory by virtue of the provisions of 26 U.S.C. § 7604, this position is unsound. As Judge Friendly observed in rejecting a similar argument, the statutory requirement of judicial enforcement of IRS summonses "does not convert our own tax assessors into a 'tribunal' ...." *In re Letters Rogatory Issued by the Director of Inspection of the Government of India,* 385 F.2d 1017, 1021 (2d Cir.1967). *Compare In re Letters Rogatory from Tokyo District,* 539 F.2d 1216 (9th Cir.1976) (emphasizing the broad prosecutorial discretion of the Tokyo District Public Prosecutor). Furthermore, since it is not at all clear that a letter rogatory issued in this matter would be recognized by a Japanese court, it is impossible to conclude that this method is a "substantially equivalent" alternative to enforcement of the summons. *See United States v. Vetco, supra,* 691 F.2d at 1920. As

a third and final "alternative," respondents propose that the IRS issue a "formal document request" pursuant to the recently-enacted provisions of section 337 of the Tax Equity and Fiscal Responsibility Act of 1982, 26 U.S.C. § 982. However, the purpose of section 982 is to sanction a taxpayer who fails to produce foreign-based documentation, not to supersede existing IRS summons authority. In sum, there are no reasonable alternative means available to secure the information sought in Item 5 of the summons.

Section 420(1)(c) also mandates consideration of (1) the state of origin of the information and (2) the extent to which compliance would undermine important Japanese interests. Though the documents in question originated in Japan, this fact alone is not dispositive. *See United States v. Vetco, supra; United States v. Bank of Nova Scotia,* 691 F.2d 1384 (11th Cir.1982); *SEC v. Banca Della Svizzera Italiana,* 92 F.R.D. 111 (S.D.N.Y.1981). Of greater significance is the possibility that disclosure of Toyota Japan's financial records might undermine the national interests of the Government of Japan. Although Japan does not have a "blocking" statute prohibiting disclosure of the information requested here, its Government has taken the position that, in this case, compelling the production of documents located in Japan would violate international law. With all due respect to the Government of Japan's position, this Court must reject such a restrictive view in light of the authorities cited above. Although the Government of Japan may have valid concerns about the potential for double taxation arising from the IRS audit, this interest does not support a conclusion that the IRS request for information should be denied. The information sought by the IRS is necessary for a fair and accurate determination of Toyota U.S.A.'s tax liability; therefore, enforcement of the summons should help minimize the possibility of a double taxation situation arising. The IRS is, of course, bound by the Tax Treaty provisions designed to avoid double taxation. *See* 26 U.S.C. § 7852(d).

In balancing these factors, it is determined that enforcement of Item 5 of the summons may be ordered without offense to the principles of international law. Accordingly, the petition is granted with respect to this provision.

### CONCLUSION

The petition is granted against respondent Toyota Motor Corporation with respect to Item 5. The petition is denied in all other respects.

### APPENDIX

#### TOYOTA MOTOR SALES U.S.A., INC.

##### Attachment of Summons

Fiscal Year 1975 covers the period 10/1/74 to 9/30/75

Fiscal Year 1976 covers the period 10/1/75 to 9/30/76

Fiscal Year 1977 covers the period 10/1/76 to 9/30/77

Fiscal Year 1978 covers the period 10/1/77 to 9/30/78

1. Provide the model code number for each passenger car model sold in the Japan home market for each of the fiscal years 1976, 1977 and 1978.

2. Provide the physical specifications for each car model identified by model code number in item 1 above for each of the fiscal years 1976, 1977 and 1978. These specifications should include but are not limited to the drive train components, interior finishes, accessories, and safety and antipollution equipment.

3. Provide the direct and indirect costs of materials, labor, and any or all other expenses pertaining to the manufacture of each passenger car model sold in the Japan home market for each of the fiscal years 1976, 1977 and 1978.

4. Provide the direct and indirect selling, general and administrative expenses pertaining to the sale of each passenger car model sold to Japan dealers for each of the fiscal years 1976, 1977 and 1978.

5. Provide unit selling prices, including the price of spare tire and tools, to Japan dealers for each passenger car model sold during each of the fiscal years 1976, 1977 and 1978.

6. Provide the suggested retail prices for each passenger car model sold in the Japan home market for each of the fiscal years 1976, 1977 and 1978.

7. Provide the total number of units of each passenger car model sold to Japan dealers for each of the fiscal years 1976, 1977 and 1978.

8. Provide the direct and indirect costs of materials, labor, and any or all other expenses pertaining to the manufacture of each passenger car model sold to Toyota Motor Sales U.S.A., Inc. for each of the fiscal years 1976, 1977 and 1978.

9. Provide the direct and indirect selling, general and administrative expenses pertaining to the sale of each passenger car model sold to Toyota Motor Sales U.S.A., Inc. for each of the fiscal years 1976, 1977 and 1978.

10. Provide the factors, both economic and otherwise, that entered into the determination of transfer prices charged to Toyota Motor Sales U.S.A., Inc. for each of the fiscal years 1975, 1976, 1977, and 1978. These factors may include but are not limited to marketing studies of demand conditions, evaluation of competition, product mix, profit projections, distributor and dealer profit margins, government regulations, and currency exchange rates.

11. Policy of Toyota Motor Co., Ltd. and/or Toyota Motor Sales Co., Ltd. as to how the transfer prices charged to Toyota Motor Sales U.S.A., Inc. for each of the fiscal years 1975, 1976, 1977, and 1978 were established.

12. With respect to each of the thirty-two car models set forth below under the heading of "Home Market Passenger Car Models," provide the following:

A. Direct and indirect charges and taxes included in the selling prices charged to Japan dealers for the fiscal year 1975. These charges and taxes include but are not limited to freight, storage, advertising & promotion, selling expenses warranty, commodity taxes, and rebates & discounts.

B. Total number of units sold to Japan dealers for the fiscal year 1975.

Home Market Passenger Car Models

| | | | |
|---|---|---|---|
| 1. | TE 30 – KD | 17. | TE 37 – MN |
| 2. | TE 30 – KN | 18. | TA 22 – K (D, D1) |
| 3. | TE 30 – HN | 19. | TA 22 – K (S, C4) |
| 4. | TE 30 – KNF | 20. | TA 22 – H (S, C4) |
| 5. | TE 30 – HNF | 21. | TA 22 – H (D, D1) |
| 6. | TE 30 – HD | 22. | TA 22 – M (S, C4) |
| 7. | TE 30 – MN | 23. | TT 100 – KN |
| 8. | TE 30 – MNF | 24. | RT 102 – HDF |
| 9. | TE 35 – HN | 25. | RT 102 – KNF |
| 10. | TE 35 – KN | 26. | RT 108V – KDF |
| 11. | TE 35 – MN | 27. | RT 108V – HDF |
| 12. | TE 36V – KNF | 28. | RT 112 – HN |
| 13. | TE 36V – HNF | 29. | RT 114 – MSE |
| 14. | TE 36V – HN | 30. | MX 10 – HN |
| 15. | TE 36V – KN | 31. | MX 20 – HN |
| 16. | TE 37 – MZBR | 32. | MX 27 – MN |

13. Identify the current officers and directors of Toyota Motor Sales, U.S.A., Inc. by name, address and position description.

14. Identify the current officers and directors of Toyota Motor Corporation by name, address and position description.

15. Provide all orders, directives, instructions, commands and regulations issued to Toyota Motor Sales, U.S.A., Inc. by Toyota Motor Co., Ltd., and Toyota Motor Sales Co., Ltd. for each of the fiscal years 1975, 1976, 1977 and 1978.