UNITED STATES of America, et al.,
Plaintiffs-Appellees,

v.

S. Don HUCKABY,
Defendant-Appellant.

No. 84–1774.

United States Court of Appeals,
Fifth Circuit.

Nov. 18, 1985.

Rehearing and Rehearing En Banc
Denied Dec. 31, 1985.

Urquhart & Hassell, Edward D. Urquhart, Charles J. Escher, Houston, Tex., for defendant-appellant.

Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., Dept. of Justice, Michael L. Paup, Chief, Appellate Sec., Charles E. Brookhart, William A. Whitledge, Washington, D.C., for plaintiffs-appellees.

Before RANDALL, DAVIS and HILL, Circuit Judges.

## OPINION

RANDALL, Circuit Judge:

Sidney Don Huckaby appeals from an order of the United States District Court for the Western District of Texas enforcing an Internal Revenue Service summons issued against him as president of Good Times Liquor, Inc. The order requires production of an accounts receivable ledger for the 1980, 1981, and 1982 tax years. In the summons enforcement hearing, Huckaby asserted as a defense that he did not possess the requested document, but he declined to be cross-examined on the ground that his answers might tend to incriminate him and thus he was privileged not to testify under the fifth amendment. The District Court ordered the summons enforced, and we affirm.

### I.

Huckaby and Enzo "Jimmy" Pellegrino were shareholders in a liquor store and distributorship in Harker Heights, Texas, called Good Time Liquor, Inc., from 1979 through 1982. In early 1983, Huckaby became the sole shareholder of the business, until he sold its assets later that year. As part of an investigation of the tax liabilities of Pellegrino and the corporation, Internal Revenue Service ("IRS") Special Agent Edward J. Martin sought to examine certain documents from the 1980, 1981, and 1982 tax years, including a red accounts receivable book. After it became clear that voluntary production was unlikely, Martin served a summons on Huckaby as company president requesting production of corporate records. Huckaby did not produce the documents, and told the IRS that he "did not have possession of the summoned corporate records and intended to claim his fifth amendment privilege to all further questions." The IRS petitioned to enforce the summons, and a hearing was held. Huckaby objected to enforcement of the

summons and raised the affirmative defense of nonpossession.

On direct examination by his counsel, Huckaby testified as follows:

Q. Okay. Mr. Huckaby, are you presently in possession of, have the custody or control of the red ledger, that is being summonsed today by the Government?

A. No.

Q. When is the last time you had possession, custody or control of that item?

A. Late January, early February.

Q. Of 1983?

A. Yes, sir.

Q. At that time did you know that you were under criminal investigation by the Internal Revenue Service?

A. Absolutely not.

Q. You had not been summonsed for those records either at that time?

A. No. Uh-uh.

Q. Did you have any idea that you would be under investigation or have those records summonsed from you?

A. No.

Q. Did your loss of possession, custody or control of those records have anything to do with anticipation of any criminal investigation by the Internal Revenue Service or of any summons?

A. No, sir.

MR. ESCHER: Your Honor, we tender the witness.

On cross-examination by counsel for the government, Huckaby refused to answer further questions concerning the whereabouts of the ledger:

BY MR. PITZINGER:

Q. You have stated that you are not in possession of the red subsidiary accounts receivable ledger?

A. That is what I stated.

Q. Where are the records?

MR. ESCHER: Objection, Your Honor. Under the *Curseo* [sic] case we have also advised our client to invoke the privilege against self-incrimination on that question as well.

BY MR. PITZINGER:

Q. Who did you give those records to?

MR. ESCHER: The same objection, Your Honor.

MR. PITZINGER: Your Honor, then I move to strike his earlier testimony that they are not in his possession and I have not had an opportunity to cross examine the witness upon whether or not they are in his possession.

THE COURT: Do you have anything else you need to question him about other than that particular thing?

MR. PITZINGER: No, Your Honor. That would be my last point.[1]

The District Court ruled in a written order that the summons be enforced to the extent that it required production of documents. On the fifth amendment issue, the court held that a party who takes the stand on his own behalf cannot then claim the privilege against self-incrimination on cross-examination on matters reasonably related to the subject matter of his direct examination. Accordingly, the court struck Huckaby's testimony on direct that after January or February 1983 he no longer had possession, custody, or control of the ledger, and found that Huckaby failed to carry his burden of production of credible evidence on the issue. Huckaby filed a timely notice of appeal.[2]

---

**1.** Huckaby did not offer any evidence to show how his testimony as to the whereabouts of the ledger would "support a conviction under a federal criminal statute" or "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). However, because of our disposition of this appeal on grounds other than the fifth amendment, we need not decide whether the privilege was validly invoked. *See also infra* note 7.

**2.** The order enforcing the IRS summons is appealable as a final order. *Reisman v. Caplin,* 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964).

## II.

The Internal Revenue Code authorizes the IRS to examine records, to issue summonses, and to take testimony for the purpose of "determining the liability of any person for any internal revenue tax." 26 U.S.C. § 7602(a); *see United States v. Euge*, 444 U.S. 707, 710–11, 100 S.Ct. 874, 877–78, 63 L.Ed.2d 141 (1980). In order for a district court to enforce an IRS summons, the government must produce evidence showing that (1) the summons was issued for a proper purpose; (2) the information sought is relevant to that purpose; (3) the information sought is not already within the IRS Commissioner's possession; and (4) all administrative steps required by the Internal Revenue Code have been followed. *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254, 255, 13 L.Ed.2d 112 (1964); *United States v. Texas Heart Institute*, 755 F.2d 469, 474 (5th Cir.1985). Huckaby concedes that the government need not introduce evidence that he actually possesses the requested documents as a part of this initial showing.

■■■ Once the *Powell* factors have been met, "the burden shifts to the parties resisting the summons [1] to demonstrate that the IRS has failed to meet its *Powell* burden [citations omitted], [2] to assert and prove that enforcement would represent an abuse of the court's process [citations omitted]," *Texas Heart Institute*, 755 F.2d at 474, or [3] to show any other "appropriate ground" on which the summons should not be enforced. *Powell*, 379 U.S. at 58, 85 S.Ct. at 255. A lack of possession and control of summoned documents is a "valid defense" to an IRS application for an enforcement order. *United States v. Barth*, 745 F.2d 184, 187 (2d Cir.1984) (citing *United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983)), *cert. denied*, —— U.S. ——, 105 S.Ct. 1356, 84 L.Ed.2d 378 (1985). However, as with any defense in an IRS summons enforcement proceeding, the party resisting enforcement bears the burden of producing credible evidence that he does not possess or control the documents sought. *Barth*, 745 F.2d at 188 (nonpossession must be "properly established"); *see Texas Heart Institute*, 755 F.2d at 475 (respondent must "prove" affirmative defenses); *United States v. Hankins*, 565 F.2d 1344, 1351–52 (5th Cir.) (government satisfied *Powell* factors, no evidence introduced by respondent "that he was unable to produce the records" when respondent would testify only on condition that he not be cross-examined, therefore summons properly enforced), *rehearing denied*, 581 F.2d 431 (5th Cir.1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979); *United States v. Toyota Motor Corp.*, 569 F.Supp. 1158, 1161 (C.D.Cal.1983) (petition to enforce summons denied when respondent by affidavit and testimony produced evidence showing that documents were discarded in normal course of business and government introduced no contrary evidence).[3] The issue presented by this appeal is whether

---

**3.** Huckaby disagrees with the proposition that he bears a burden of producing credible evidence of nonpossession, citing *United States v. Patterson*, 219 F.2d 659 (2d Cir.1955), and *United States v. Silvio*, 333 F.Supp. 264 (W.D.Mo. 1971). Instead, he claims that once he made a threshold, although uncross-examined, showing of a lack of possession of the documents, then the burden of producing evidence concerning the whereabouts of the ledger should have shifted to the IRS. *Patterson*, however, simply stands for the rule that in a criminal contempt proceeding, the government may not place the burden of proof on an essential element of the offense on the defendant. 219 F.2d at 661. *Silvio* decided, without citation to authority, that once the respondent (1) made a showing, by affidavit, that he had produced all the records which were or which ever had been in his possession from the date of the issuance of the summons until the date of administrative hearings in the case, and (2) testified in the administrative proceeding as to his lack of knowledge of the whereabouts of summoned records, 333 F.Supp. at 266, then absent a claim that the respondent participated in a scheme to defeat the summons or that the affidavits or testimony were false, the government has the burden to "demonstrate" continued possession. *Id.* at 267. *See United States v. Hankins*, 565 F.2d 1344, 1352 (5th Cir.1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979). Whatever the validity of *Silvio*, it is clear that Huckaby can find no solace in it because he did not testify under oath in any forum that he had no knowledge of the whereabouts of the ledger. Respondent in *Silvio* introduced credible, *i.e.*, cross-examined evidence of nonpossession; Huckaby has not. *See also Toyota Motor Corp.*, 569 F.Supp. at 1161.

Huckaby may successfully resist enforcement of the summons with a defense of lack of possession of the accounts receivable ledger by simply stating that he did not possess it, then asserting his fifth amendment privilege in response to cross-examination on that statement.[4]

### III.

■ Having concluded that Huckaby had a burden of producing credible evidence of nonpossession in the summons enforcement hearing, it is clear that under the reasoning of *Rylander*, 460 U.S. at 752, 103 S.Ct. at 1548, Huckaby has not met his burden. In *Rylander*, the respondent ignored an IRS summons, and failed to comply with an order to show cause why the summons should not be enforced by the district court. The court enforced the summons, and respondent appeared before an IRS agent as ordered. However, he did not produce the records requested, and the district court ordered a hearing to determine whether respondent should be held in civil contempt. At the hearing, respondent testified as follows:

EXAMINATION BY THE COURT

Q: Mr. Rylander, you have filed an affidavit in which you say that you do not have the records that are the subject of the action; is that true, sir?

A: That is correct your Honor.

Q: Where are the records?

A: I respectfully decline to answer on the advice of counsel and assert my Fifth Amendment.

460 U.S. at 763, 103 S.Ct. at 1555 (Marshall, J., dissenting).

Respondent in *Rylander* had the burden of producing evidence on his defense of a lack of possession. However, since Rylander "declined to be cross-examined with respect to his assertions of nonpossession, the District Court was entirely justified in concluding, as it did, that Rylander 'fail[ed] to introduce any evidence at the contempt trial.' This was a time for testimony, and Rylander's *ex parte* affidavit and uncross-examined testimony were properly disregarded by the District Court." *Id.* at 755, 103 S.Ct. at 1551. The Court rejected Rylander's claim that the fifth amendment allowed him both to avoid cross-examination and to meet his burden of production:

[W]hile the assertion of the Fifth Amendment privilege against compulsory self-incrimination may be a valid ground upon which a witness such as Rylander declines to answer questions, it has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production. We think the view of the Court of Appeals would convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from advancing proof in support of a burden which would otherwise have been his.

*Id.* The Court added that "the claim of privilege is not a substitute for relevant evidence." *Id.* at 761, 103 S.Ct. at 1554. *See also United States v. Meeks*, 719 F.2d 809, 812 (5th Cir.1983) ("privilege against self-incrimination cannot substitute for evidence").

The reasoning of *Rylander*, although not its holding, directly controls Huckaby's arguments on this appeal. Huckaby had a burden of producing relevant and reliable evidence that he was not in possession or control of the summoned documents in order to sustain his affirmative defense to enforcement of the summons.[5] He did not

---

4. In the District Court, Huckaby unsuccessfully argued that the *Powell* factors were not met by the government. He has not pursued those claims on appeal, and we consider those issues abandoned.

5. *Rylander* did not decide this point. In fact, the Court's conclusion that Rylander had a burden of production in the contempt proceeding was based in part on the presumption of continuing possession following entry of the enforcement order. *Maggio v. Zeitz*, 333 U.S. 56, 64–67, 68 S.Ct. 401, 405–07, 92 L.Ed. 476 (1948). Rylander could not overcome that presumption without introducing credible evidence in the contempt proceeding. 460 U.S. at 760–61 & n. 3, 103 S.Ct. at 1553–54 & n. 3. No such presumption applies in this summons enforcement proceeding, and *"Rylander* leaves open the ques-

do so. His testimony is nearly indistinguishable from the testimony that the Supreme Court found lacking in *Rylander.*

Huckaby attempts to distinguish *Rylander* by noting that *Rylander* was a civil contempt proceeding in which respondent had a "burden of proof." Huckaby, on the other hand, "was not testifying under any burden of proof from any 'burden of production' arising from a prior court order enforcing this summons." Brief on Behalf of Respondent-Appellant at 24.

Huckaby is correct that *Rylander* was a civil contempt proceeding and this is a summons enforcement action. However, that difference is not dispositive. Rylander and Huckaby each had a burden of production, although for different reasons. Respondent in *Rylander* was obliged to introduce evidence that he did not possess requested documents at the time of his testimony in order to avoid a judgment of civil contempt because he was presumed to still be in possession of the documents following the enforcement order. *See supra* note 5. He did not meet this burden by simply stating that he did not possess the documents and refusing to answer all other questions put to him. In this case, once the government satisfied the *Powell* factors, Huckaby was obliged to introduce credible evidence that he did not possess the requested document in order to avoid enforcement of the summons, because he carried the burden of production on his affirmative defense of nonpossession. He did not meet this burden by simply stating that he did not possess the document and refusing to answer all other questions put to him. If Huckaby wished to avoid enforcement of the summons on the ground that he did not possess the document, then the enforcement hear-

ing "was a time for testimony," *Rylander,* 460 U.S. at 758, 103 S.Ct. at 1552.

Huckaby disagrees, relying in large part on *Curcio v. United States,* 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957), which concerned waiver of the fifth amendment privilege by a corporate custodian who was the subject of a subpoena *ad testificandum. Id.* at 121, 77 S.Ct. at 1148. The Court held, in the context of a criminal contempt proceeding, that *"forcing* the custodian to testify orally as to the whereabouts of nonproduced records requires him to disclose the contents of his own mind.... That is contrary to the spirit and letter of the Fifth Amendment." *Id.* at 128, 77 S.Ct. at 1151–52 (emphasis added). Huckaby's reliance on *Curcio* is misplaced for several reasons.

First, and most important, the District Court did not "force" Huckaby to testify as to the whereabouts of the ledger on cross-examination or risk the court's contempt power. Rather, the court simply enforced the summons on the basis of Huckaby's failure to introduce evidence on an issue on which he had the burden of production. As the Court noted in *Rylander,* "[w]e have squarely rejected the notion ... that a possible failure of proof on an issue where the defendant had the burden of proof is a form of 'compulsion' which requires that the burden be shifted from the defendant's shoulders to that of the government." 460 U.S. at 758, 103 S.Ct. at 1553. *Compare United States v. Edgerton,* 734 F.2d 913, 919–21 (2d Cir.1984) (civil contempt order entered for taxpayer's refusal to answer questions posed by the court as to whereabouts of tax records vacated under *Curcio;* responses were "forced").[6]

tion of whether resort to the privilege against self-incrimination in a subpoena enforcement proceeding will shift the burden of proving availability to the government," *Project, White-Collar Crime: Survey of Law—1983 Update,* 21 Am.Crim.L.Rev. 179, 183 (1983). However, to place the burden of proving availability on the government after the respondent simply states that documents are unavailable and refuses further testimony would be inconsistent with settled law that requires the respondent to bear the burden of producing credible evidence on af-

firmative defenses in summons enforcement actions. *See supra* note 3 and accompanying text.

**6.** *Curcio* "contains dicta to the effect that mere authentication testimony may be compelled." *In re Grand Jury Matter (Brown),* 768 F.2d 525, at 527 (3rd Cir.1985) (en banc) (citing *Curcio,* 354 U.S. at 125, 77 S.Ct. at 1150). The Third Circuit, en banc, has determined the dicta to be inconsistent with *Curcio's* holding, and declined to follow the dicta in a recent civil contempt proceeding. 768 F.2d at 527.

Moreover, this case concerns only production of corporate documents, like *Rylander*, and not oral testimony, like *Curcio*. Although the summons required Huckaby both to produce books and records and to testify about them, the order enforcing the summons entered by the District Court only requires production of documents, and not testimony. Record Vol. 1 at 54. Therefore, this case, like *Rylander*, is "exactly the converse" of *Curcio*. 460 U.S. at 760, 103 S.Ct. at 1554.

Finally, waiver was the focus of *Curcio*, but we do not address that topic. The question of whether Huckaby waived his fifth amendment right by taking the stand at the summons enforcement proceeding need not be decided,[7] because our affirmance of the enforcement of the summons is based not on waiver, but simply on a failure to meet a burden of production. *Rylander*, 460 U.S. at 761 n. 2, 103 S.Ct. at 1554 n. 2.[8]

Regardless of the application of the reasoning of *Rylander*, Huckaby argues that even if his testimony is struck, then the testimony of an employee, Carol Pitre, satisfied his burden of introducing evidence on the lack of possession defense. However, Pitre did not begin work at the company until 1982, and there is no indication that she could testify as to the existence or whereabouts of records from 1980 and 1981. Record Vol. 2 at 45–46. Moreover,

it seems clear from a review of the testimony of Pitre and other witnesses that, as counsel for Huckaby stated, "Ms. Pitre was testifying about a different book that was thrown away monthly," *id.* at 49, not the book summoned. Pitre's testimony does not satisfy Huckaby's burden.

## IV.

Huckaby did not meet his burden of producing credible evidence that he did not possess the requested records. Therefore, the District Court's finding "that records existed and were in Mr. Huckaby's possession, custody or control as President of the Corporation at the time he was served with the summons" is not clearly erroneous, Fed.R.Civ.P. 52(a), and the summons was properly enforced. The judgment of the District Court is AFFIRMED.

---

**7.** We need not decide to what extent the fifth amendment privilege is available to Huckaby in light of the fact that the summons is directed to the corporation, and normally "a corporate representative or agent [such as Huckaby] cannot claim a fifth amendment privilege against producing corporate documents, regardless of whether they contain information incriminating to him or were written by him, and regardless of whether the corporation is large or small." *In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52, 56 (2d Cir.1985). Moreover, we do not address to what extent the fifth amendment privilege is available in summons enforcement proceedings in which the defense of nonpossession is not raised. *Cf. Fisher v. United States*, 425 U.S. 391, 410, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1975) (affirming general rule that corporate documents not privileged, but holding act of producing document by corporate custodian may not be privileged if act of production itself may be incriminating); *Rogers Transportation, Inc. v. Stern*, 763 F.2d 165, 166 (3d

Cir.1985) (en banc). Further, we need not decide whether to equate majority stockholders in closely held corporations with the sole proprietor in *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984). *Compare In re Grand Jury Subpoena Dated January 28, 1985*, 769 F.2d 52 (2d Cir.1985) (majority stockholder in closely held corporation may not use fifth amendment privilege in response to grand jury subpoena to produce corporate records), *with In re Grand Jury Matter (Brown)*, 768 F.2d 525 (3d Cir.1985) (en banc) (sole stockholder of corporation may exercise fifth amendment privilege in response to grand jury subpoena requiring authentication of corporate records).

**8.** In *Rylander*, the Court did not, as Huckaby claims, hold that a witness who testified at a contempt hearing waived his fifth amendment right merely by taking the stand. Rather, it noted expressly that it did not need to decide the issue. *Id.*