# UNITED STATES ET AL. *v.* RYLANDER ET AL.

No. 81–1120.   Argued January 18, 1983—Decided April 19, 1983

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, BLACKMUN, POWELL, STEVENS, and O'CONNOR, JJ., joined. MARSHALL, J., filed a dissenting opinion, *post*, p. 762.

*Deputy Solicitor General Wallace* argued the cause for petitioners. With him on the briefs were *Solicitor General Lee, Assistant Attorney General Archer, Jerrold J. Ganzfried, Charles E. Brookhart, Jo-Ann Horn,* and *William A. Whitledge.*

*Joseph F. Harbison III,* by appointment of the Court, 456 U. S. 1005, argued the cause and filed a brief for respondents.

JUSTICE REHNQUIST delivered the opinion of the Court.

Respondent Rylander was held in civil contempt by the United States District Court for the Eastern District of California because of his failure to comply with its earlier order enforcing an Internal Revenue Service (IRS) summons for corporate books and records. The Court of Appeals for the Ninth Circuit reversed that holding, concluding that Rylander's showing at the contempt hearing, together with his invocation of the privilege against compulsory self-incrimination, required the Government to shoulder the burden of producing evidence that Rylander was able to produce the documents in question. Because of a conflict among the various Courts of Appeals on this issue, we granted certiorari, 456 U. S. 943 (1982), and we now reverse.

In January 1979, the IRS issued a summons to Rylander pursuant to 26 U. S. C. § 7602. The summons ordered him to appear before an agent of the Service in Sacramento, Cal., and to produce for examination, and testify with respect to, books and records of two corporations. Rylander was the president of each corporation. When he failed to comply with the summons, the District Court issued an order to show cause why the summons should not be enforced. Rylander for several months succeeded in evading service, but in November 1979 the Marshal was able to personally serve the fourth successive order to show cause issued by the court. In January 1980, on the return date of that order, Rylander failed to file a responsive pleading and did not appear at the show cause hearing. He had sent an unsworn letter to the court claiming he was neither the president of either corporation nor associated with them in any way. The District Court enforced the IRS summons and ordered Rylander to appear before an agent of the Service in February 1980 to produce the corporate records.

Rylander neither sought reconsideration of the enforcement order nor did he appeal from it. He appeared as ordered before the agent, but failed to produce the records. After this encounter, the District Court issued an order to show cause why Rylander should not be held in contempt. Rylander again successfully evaded service of the court's order, and the court in May 1980 found that he was willfully avoiding service and issued a bench warrant for his arrest.

The contempt hearing took place on two different dates in October 1980. After an initial skirmish, Rylander took the witness stand and verified an "Oath in Purgation of Contempt" which he had earlier submitted to the court. The essence of this declaration was that he did not possess the records and had not disposed of them to other persons. He refused to submit to additional questioning under oath from the Government, asserting the privilege against compulsory

self-incrimination conferred by the Fifth Amendment to the United States Constitution.

The District Court held Rylander in contempt, finding that he had "fail[ed] to introduce any evidence" in support of his claim that he did not possess the records. The court affirmatively found that Rylander "as president or other corporate officer, had possession or control, or both, of the books and records of said corporations." App. to Pet. for Cert. 17a–18a. Thus 21 months after the IRS had issued a summons to him, Rylander was finally faced with a civil contempt order directing him to either produce the subpoenaed records or face imprisonment.

Rylander appealed to the Court of Appeals, which reversed the District Court. 656 F. 2d 1313 (CA9 1981). The Court of Appeals agreed that the Government, in a contempt proceeding, meets its initial burden by showing only a failure to comply and the burden is then on the defendant to come forward with evidence showing " 'categorically and in detail' " why he is unable to comply. *Id.*, at 1318. But the Court of Appeals concluded that a defendant need not meet this burden where "he properly claims that his testimony as to the whereabouts of the documents might be incriminatory." *Id.*, at 1319. The court stated further:

> "When the defendant has made a bona fide fifth amendment claim, his statement that the documents are not in his possession or under his control is sufficient to satisfy his burden of production. The burden then shifts to the government to produce evidence showing that the documents in question actually exist and are in the defendant's possession or under his control." *Ibid.*

After concluding that Rylander's failure to raise this defense in the enforcement proceeding did not limit his argument in the contempt proceeding, the court determined that if Rylander's Fifth Amendment claim is valid, his burden of

production had been met.[1]  We think the Court of Appeals was incorrect both in its view of the relationship between the enforcement proceeding and the contempt proceeding, and in its view of the effect of Rylander's invocation of his Fifth Amendment privilege on the burden of production at the latter hearing.

On numerous occasions this Court has been called upon to review the statutory authorization for the IRS to summon witnesses and records and seek judicial enforcement of such summons.  See, *e. g.*, *United States* v. *LaSalle National Bank,* 437 U. S. 298 (1978); *Fisher* v. *United States,* 425 U. S. 391 (1976); *United States* v. *Powell,* 379 U. S. 48 (1964); *Reisman* v. *Caplin,* 375 U. S. 440 (1964).  There is no disagreement here concerning that basic statutory scheme.  In the present case, the Court of Appeals held that notwithstanding the issuance of the enforcement order, Rylander was free to relitigate the question of his possession or control of the records in the contempt proceeding.  The Court of Appeals emphasized that the enforcement proceeding was summary in nature, that the Government's burden was light, and that there had been no express finding in the enforcement proceeding that Rylander was in possession or control of the records.

We think the Court of Appeals' view of the matter gave insufficient weight to this Court's observations in *Maggio* v. *Zeitz,* 333 U. S. 56, 69 (1948):

> "It would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy.  The procedure to enforce a court's order commanding or forbidding

---

[1] The Court of Appeals remanded to the District Court for a finding concerning the validity of Rylander's Fifth Amendment claim and, provided the claim is sustained, an opportunity for the Government to introduce additional evidence concerning Rylander's ability to comply.

an act should not be so inconclusive as to foster experimentation with disobedience."

See also *id.*, at 75. Because a proceeding to enforce an IRS summons is an adversary proceeding in which the defendant may contest the summons "on any appropriate ground," *Reisman* v. *Caplin, supra,* at 449, and because lack of possession or control of records is surely such a ground, the issue may not be raised for the first time in a contempt proceeding. Cf. *United States* v. *Bryan,* 339 U. S. 323 (1950); *United States* v. *Fleischman,* 339 U. S. 349 (1950). See also *United States* v. *Euge,* 444 U. S. 707 (1980).

In a civil contempt proceeding such as this, of course, a defendant may assert a *present* inability to comply with the order in question. *Maggio* v. *Zeitz, supra,* at 75–76; *Oriel* v. *Russell,* 278 U. S. 358, 366 (1929). While the court is bound by the enforcement order, it will not be blind to evidence that compliance is now factually impossible. Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action. It is settled, however, that in raising this defense, the defendant has a burden of production. *McPhaul* v. *United States,* 364 U. S. 372, 379 (1960); *Maggio* v. *Zeitz, supra,* at 75–76; *Oriel* v. *Russell, supra,* at 366. See also *United States* v. *Fleischman, supra,* at 362–363. Thus while Rylander could not attack the enforcement order on the ground that he lacked possession or control of the records at the time the order was issued, he could defend the contempt charge on the ground that he was *then* unable to comply because he lacked possession or control.

The Court of Appeals, while recognizing that Rylander was obligated to assume the burden of production in making this defense, felt that the showing made by Rylander at the October 1980 hearing was sufficient to shift the burden back to the Government. We disagree. We first analyze the effect of Rylander's denial of possession when he took the witness stand at the contempt hearing and when he submitted the

"Oath in Purgation of Contempt." Since he declined to be cross-examined with respect to his assertions of nonpossession, the District Court was entirely justified in concluding, as it did, that Rylander "fail[ed] to introduce any evidence at the contempt trial." This was a time for testimony, and Rylander's *ex parte* affidavit and uncross-examined testimony were properly disregarded by the District Court. *McGautha* v. *California*, 402 U. S. 183, 215 (1971); *Brown* v. *United States*, 356 U. S. 148, 155 (1958).

The Court of Appeals also gave weight to the fact that Rylander's asserted reason for refusing to allow cross-examination was his claim that answering such questions might lead him to incriminate himself. But while the assertion of the Fifth Amendment privilege against compulsory self-incrimination may be a valid ground upon which a witness such as Rylander declines to answer questions, it has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production. We think the view of the Court of Appeals would convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his. None of our cases support this view.

We have squarely rejected the notion, apparently subscribed to by the Court of Appeals, that a possible failure of proof on an issue where the defendant had the burden of proof is a form of "compulsion" which requires that the burden be shifted from the defendant's shoulders to that of the government. *McGautha* v. *California, supra; Williams* v. *Florida*, 399 U. S. 78 (1970); see also *Barnes* v. *United States*, 412 U. S. 837 (1973); *Turner* v. *United States*, 396 U. S. 398 (1970); *Yee Hem* v. *United States*, 268 U. S. 178 (1925); *Wilson* v. *United States*, 162 U. S. 613 (1896). In *Williams*, the Court said:

"The defendant in a criminal trial is frequently forced to testify himself and to call other witnesses in an effort to reduce the risk of conviction. When he presents his witnesses, he must reveal their identity and submit them to cross-examination which in itself may prove incriminating or which may furnish the State with leads to incriminating rebuttal evidence. *That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination.* The pressures generated by the State's evidence may be severe but they do not vitiate the defendant's choice to present an alibi defense and witnesses to prove it, even though the attempted defense ends in catastrophe for the defendant. However 'testimonial' or 'incriminating' the alibi defense proves to be, it cannot be considered 'compelled' within the meaning of the Fifth and Fourteenth Amendments." 399 U. S., at 83–84 (emphasis added).

The Court of Appeals nonetheless thought that this Court's decision in *Curcio* v. *United States*, 354 U. S. 118 (1957), prevented Rylander from being required to carry his burden of production or risk the consequences from his failure of proof. We do not read the case that way. The issue in *Curcio*, as stated by the Court in its opinion in that case, was "whether petitioner's personal privilege against self-incrimination attaches to questions relating to the whereabouts of the union books and records which he did not produce pursuant to subpoena." *Id.*, at 122. The Court went on to distinguish cases such as *Hale* v. *Henkel*, 201 U. S. 43 (1906), holding that a corporation had no Fifth Amendment privilege against self-incrimination, and cases such as *Wilson* v. *United States*, 221 U. S. 361 (1911), and *United States* v. *White*, 322 U. S. 694 (1944), holding respectively that the custodians of neither records belonging to unions nor those belonging to corpora-

tions might withhold production of such records on the ground that the custodian might be incriminated by their production. The Court refused to accept the Government's contention, based on those cases, that the custodian had no privilege to refuse to testify about such records on grounds that testimony might incriminate him. In reversing the contempt conviction, however, the Court pointedly noted:

> "This conviction related solely to petitioner's failure to answer questions pursuant to the personal subpoena *ad testificandum*. He has not been charged with failing to produce the books and records demanded in the subpoena *duces tecum*." 354 U. S., at 121.

The instant proceeding is exactly the converse of the one in *Curcio*. Rylander was originally ordered both to produce books and records and to testify about them. But the only order against him remaining at the time of the contempt hearing was the order to produce books and records. The Court of Appeals assumed, as we do, that Rylander's claim of privilege "attached" to questions about the whereabouts of the records; that was the issue decided in *Curcio*. But that is to say no more than if Rylander asserted a valid claim of privilege at the contempt hearing, then the claim could not be overruled by the court and the respondent incarcerated for failure to answer such questions.

Rylander was not, however, incarcerated because he refused to submit himself to cross-examination by the Government at the contempt hearing. He was held in contempt for failure to comply with a previous order of the District Court enforcing an IRS summons against him. This order, unappealed from, necessarily contained an implied finding that no defense of lack of possession or control had been raised and sustained in that proceeding. The only issue open to Rylander in defending the contempt proceeding was to show inability to *then* produce, and because of the presumption of continuing possession arising from the enforcement order, *Maggio* v. *Zeitz*, 333 U. S. 56 (1948), if he sought to

defend on that ground he was required to come forward with evidence in support of it. The fact that his refusal to come forward with such evidence was accompanied by a claim of Fifth Amendment privilege may be an adequate reason for the court's not compelling him to respond to cross-examination at the contempt hearing,[2] but the claim of privilege is not a substitute for relevant evidence.

Rylander was found by the District Court to be in contempt of the enforcement order which required him to produce documents—documents justifiably found by the District Court to be in his possession.[3] He was committed to custody until such time as he should produce the documents, but the District Court again saved him the additional alternative of adducing evidence to show lack of possession or control. Rylander is thus not compelled "to submit to incarceration or run the risk of incriminating himself," 656 F. 2d, at 1319; he is committed until he either produces the documents which the District Court found to be in his possession, or adduces evidence as to his present inability to comply with that order.

We think our cases plainly support this result, and we are frank to say that we have no regret that they do. After 21 months of successfully avoiding sanctions for refusing to re-

---

[2] The Government has argued that by submitting the *ex parte* declaration and by taking the witness stand to verify that declaration, Rylander waived his Fifth Amendment privilege. See *Brown* v. *United States*, 356 U. S. 148 (1958). Because of our disposition of the case, we need not decide this question.

[3] While the District Court did not state explicitly that Rylander still possessed the documents at the time of the contempt proceeding, we believe such a finding to be plainly implicit in the court's conclusion that "as president or other corporate officer [Rylander] had possession or control, or both, of the books and records of said corporations." App. to Pet. for Cert. 17a–18a. A finding of present possession was supported in this case; the District Court found that Rylander possessed the documents at the time of the enforcement proceeding and the circumstances themselves warranted an inference of continuing possession. See *Maggio* v. *Zeitz*, 333 U. S. 56, 64–67, 75–76 (1948).

spond to an IRS summons, or show cause why he should not do so, with the District Court at each step patiently assuring itself that Rylander's procedural rights were protected, he was finally held in contempt. The Court of Appeals' view of the matter would require still additional hearings on the issue of possession or control of the corporate books or records, with the Government having the burden of production at the reopened contempt hearing. Given the oft-stated reliance of the federal income tax system on self-assessment, a plainer guide to the successful frustration of this system could hardly be imagined. As we said in an analogous context in *United States* v. *Bryan:*

> "A subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase. If that were the case, then, indeed, the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures, would be a nullity." 339 U. S., at 331.

The judgment of the Court of Appeals is

*Reversed.*

JUSTICE MARSHALL, dissenting.

I will not join another opinion which creates a new exception to a basic constitutional right—the Fifth Amendment privilege against self-incrimination.

Prior to the decision today, a man could not be held in civil contempt for failure to perform an act which he is currently unable to perform, regardless of whether he was once able to perform the act and wrongfully failed to do so. See *Maggio* v. *Zeitz*, 333 U. S. 56, 72–74, and n. 6 (1948), and authorities cited therein.

Here the District Court made no finding that respondent possessed the documents at the time of the contempt proceeding. It stated only that "as president or other corporate officer [he] *had* possession or control, or both, of the books and records of said corporations." (Emphasis added.) Al-

though "[u]nder some circumstances it may be permissible . . . to reach the conclusion of present control from proof of previous possession," *Maggio* v. *Zeitz, supra,* at 65, that is a determination to be made in the first instance by the trier of fact, not by this Court. In this case the District Court found only *past* possession, not *present* possession.

Since the District Court did not find that respondent was currently able to comply with the order to produce the documents, respondent has in effect been held in contempt simply because he invoked the Fifth Amendment when asked to testify at the contempt proceeding about the whereabouts of the documents. At the hearing the judge appointed counsel for the express "purposes of aiding [Rylander] in determining the propriety of the question and whether he desired to assert Fifth Amendment privileges to the questions which are asked." The transcript of Rylander's testimony reads as follows:

### "EXAMINATION BY THE COURT

"Q. Mr. Rylander, you have filed an affidavit in which you say that you do not have the records that are the subject of this action; is that true, sir?

"A. That is correct your Honor.

"Q. Where are the records?

"A. I respectfully decline to answer on the advice of counsel and assert my Fifth Amendment.

"THE COURT: Thank you, sir, I don't have to go beyond that, do I?

"MR. HARBISON [counsel for Rylander]: I have no questions your Honor.

"THE COURT: I am not going to direct him to answer because I don't know whether I can, sir.

"MR. HARBISON: I am going to object if you ask him any other questions. The sole purpose was to make your record.

"THE COURT: What else needs to be done in your view to make the record, Mr. Robinson?

"MR. ROBINSON [counsel for the United States]: Your Honor, I move to strike, then, the affidavit on the grounds that I have not had the opportunity to cross-examine him about the contents of that affidavit.

"THE COURT: That motion will be taken under submission. Now you are in a position to make the motion. You may step down, Mr. Rylander."

Respondent was entitled to invoke the Fifth Amendment privilege if his answers might have tended to incriminate him. As this Court stated in *Curcio v. United States*, 354 U. S. 118, 128 (1957):

"[F]orcing the custodian [of corporate records] to testify orally about the whereabouts of nonproduced records requires him to disclose the contents of his own mind. He might be compelled to convict himself out of his own mouth. That is contrary to the spirit and letter of the Fifth Amendment."

If respondent's invocation of the privilege was proper, he may not be held in contempt for failing to testify.

"[T]he power to compel testimony is not absolute. There are a number of exemptions from the testimonial duty, the most important of which is the Fifth Amendment privilege against compulsory self-incrimination. The privilege reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty. It can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used. This Court has been zealous to safeguard the values that underlie the privilege." *Kastigar v. United States*, 406 U. S. 441, 444–445 (1972) (footnotes omitted).

I agree with the Court of Appeals that the proper disposition is to

"remand for the district court to make a finding concerning the validity of Rylander's fifth amendment claim. If the court finds that Rylander's fifth amendment claim is valid, the government will have an opportunity to show that the summoned records are in Rylander's possession or under his control. The court should permit the government to introduce additional evidence in order to meet its burden. At this stage of the proceedings, . . . the government has not met its burden of showing by clear and convincing evidence that Rylander is in contempt." 656 F. 2d 1313, 1319–1320 (citations omitted).