**PUBLIC INTEREST RESEARCH GROUP OF NEW JERSEY, INC., et al., Plaintiffs,**

v.

**FERRO MERCHANDISING EQUIPMENT CORPORATION, Defendant.**

Civ. A. No. 86–4741.

United States District Court,
D. New Jersey,
Civil Division.

Oct. 6, 1987.

---

Terris, Edgecombe, Hecker & Wayne by Kathleen Millian, Washington, D.C., for plaintiffs.

Hannoch & Weisman by Todd Sahner, Roseland, N.J., for defendant.

BARRY, District Judge.

Plaintiffs, Public Interest Research Group of New Jersey, Inc. ("PIRGNJ") and Friends of the Earth ("FOE") bring this citizens suit under the Federal Water Pollution Control Act ("The Act"), 33 U.S.C. § 1251, *et seq.* (1982) against Ferro Merchandising Equipment Corporation ("Ferro") alleging discharge of certain toxins, particularly nickel, into the waterway known as the Arthur Kill in violation of pretreatment standards issued as regulations under the Act. On March 11, 1987, the parties entered into a consent decree whereby the defendant agreed to operate its facility in compliance with the Act and further agreed to extensive monitoring of its wastewater discharge. The consent decree was entered as an order of this Court on March 13, 1987. When subsequent reports indicated continuing violations of the Act, plaintiffs moved this court to both hold defendant in contempt of the consent decree and also to assess a civil penalty for seventeen of defendant's continuing violations of the applicable pretreatment regulations.

After a hearing, this Court issued an order on May 6, 1987 rejecting defendant's good faith defense to plaintiffs' motion for contempt, holding defendant liable under the strict standards of liability contemplated by the Act and assessing civil contempt fines of $2,000 per violation and civil penalties under the Act of $1,000 per violation, for nine of the seventeen violations pressed by plaintiffs. As for the remaining eight violations, the Court, based upon representations made by counsel at oral argument and the affidavits of defendant's consulting engineer, reserved judgment on ·the propriety of contempt and statutory penalties for those violations based upon the court's assessment that defendant had "raised at least a colorable question as to the cause of the violations occurring on March 15, 30 and 31st and April and 5th, rendering decision on those violations inappropriate until a more complete factual

record is presented." Order of May 6, 1987 at 4.

Since that time defendant has submitted further affidavits and other documents in support of its contention that it should not be held liable for the eight unresolved violations and has timely moved the court to reconsider its May 6th order holding defendant in contempt for the other nine violations. Plaintiff now presses the court to assess the same penalties for the eight remaining violations as the court assessed for the earlier nine. For the reasons that follow, I will deny defendant's motion for reconsideration and assess statutory penalties for the eight violations left unresolved by this Court's May 6th order. However, because defendant has now apparently taken the steps necessary to insure compliance with the Act, I will deny plaintiffs' application for further contempt sanctions.

■ Turning first to defendant's motion of reconsideration, I reject defendant's contention that the cases cited in support of the order of contempt are "inappropriate." Fundamental to each of those decisions is the proposition that a good faith effort to comply with an order of the court is not a defense. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949) ("[a]n act does not cease to be a violation of a law merely because it may have been done innocently").

While "factual impossibility" remains a defense, the defendant has not met that high burden. *See United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983) (burden of production on defendant raising defense of factual impossibility). As plaintiffs pointedly observe, defendant tacitly admits that compliance was possible prior to the subsequent violations. What is really at issue here is a situation in which a recalcitrant polluter who, after a long period of noncompliance, now points to its own inadequate and poorly maintained sewer system, lacking a precise monitoring point, to excuse its violations of the Act. On these facts, the "defense" is totally unavailing. Defendant has produced no evidence to suggest that it lacked the resources to reach compliance or

that compliance was not technically feasible. In fact, defendant is a rather large and profitable concern that has now achieved discharge levels within the confines of its permit. The simple fact that it initially focused its efforts on a recovery system to the neglect of its discharge system is not a defense. Defendant's obligations under the Act extend beyond the four walls of its plant to the point of discharge. Even if I assume good faith, the fact that difficulties with the sewer system were "unanticipated" does not excuse noncompliance with the consent decree.

As the Court of Appeals for the Third Circuit recently pointed out, a consent decree is both a judicial act and also a voluntary contractual one. *United States v. Wheeling–Pittsburgh Steel Corp.*, 818 F.2d 1077 (3d Cir.1987). As an order of the court, it is due the sanctity and respect that insures the legitimacy of our judicial system. Similarly, it carries with it a finality that insures a consent decree will not be used as a device to simply buy time or forestall judgment:

> [A] party to a consent decree, having made a 'free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment,' bears a burden which is perhaps even more formidable than had they litigated and lost.'

*Id.* at 1088 (quoting *United States Steel Corp. v. Fraternal Ass'n of Steel Haulers*, 601 F.2d 1269, 1274 (3d Cir.1979)). Here, by signing the consent decree, the defendant acknowledged the applicability of the Act and its obligations thereunder and, further, implicitedly promised both to its adversary and to the court that it would take the steps necessary to get the job done. It is in this fashion that the consent decree is also a contract. Like any other contract, the breaching party will not be heard to say that performance on its part proved more burdensome or expensive than it had anticipated.

Under long-held principles of contract law a party who enters into an agreement knowingly and voluntarily assumes the risk that it has entered into a bad bargain. In

sum, the fact that Ferro did not anticipate the deficiences of its sewer system can not excuse its violations of a consent decree voluntarily assumed. I, therefore, decline defendant's invitation to modify my May 6th order and deny its motion for reargument.

■ As for those eight alleged violations on which this court reserved judgment, this Court made clear at oral argument and by the terms of the subsequent order that defendant would be accorded a reasonable opportunity to present evidence, despite every indication to the contrary, that the violations that occurred on March 15, 30, 31 and April 14 and 15 could not be traced to Ferro. No such evidence has been forthcoming. In fact the affidavits of defendant's expert reveal that defendant can attribute no other source than its own sludge-laden sewer for the nickel and chronium discharged on those dates. The only fact established by the Coe affidavit in Ferro's favor—that Ferro did not contribute the fluids that carried the toxins into the treatment system—is of no legal significance. It is conceded that Ferro was not in operation on the dates in question and was not therefore discharging from its plating lines. Hence, defendant argues that it was not "operating" in violation of the Act. However, defendant's narrow focus on the word "operate" would greatly hamper the statutory enforcement scheme if I were to accept defendant's proffered interpretation. I now hold that an owner or operator of a source who operates his facility in such a fashion as to provide the primary causal link in a violation of its permit violates § 307(d) (codified at 33 U.S.C. § 1317(d) (1982)). *See United States v. Tex–Tow, Inc.*, 589 F.2d 1310, 1313–14 (7th Cir.1978); *cf. Cities Service Pipe Line Co. v. United States*, 742 F.2d 626 (Fed.Cir.1984) (where defendant's failure to act has been called into question, defendant bears the burden of proving that it took adequate measures to prevent and defect actions of third party leading to violation of the Act).

Here, while defendant is at a loss to explain where the fluid entered its admittedly inadequate system, it has also failed to demonstrate to the court that the nickel and chromium reported in its discharge did not originate, albeit earlier, from its plant. Certainly, Ferro was "operating" when it allowed toxins to accumulate unabated. Such an interpretation is bolstered by the common sense of the word, supported by the change in the Act's focus from water quality to discharge limits, and consistent with the Act's focus on strict liability. *See Student Public Interest Research Group of New Jersey, Inc. v. Tenneco Polymers, Inc.*, 602 F.Supp. 1394 (D.N.J.1985).

I, therefore, hold that defendant is liable for the violations occurring on the aforesaid dates and will assess a civil penalty of $500.00 per violation. While the strict standards of liability under the Act compel the conclusion that defendant be held liable under the Act for the eight violations on which I earlier reserved, it does not follow that I must now also find defendant in contempt of the consent decree for those violations. While there might be some small measure of institutionalized vindication of the decree realized from contempt sanctions now imposed, that small gain is greatly outweighed by the punitive results. As both parties recognize, civil contempt is not designed to punish the wrongdoers but rather to force, through appropriate sanctions, full compliance. By letter of July 6, 1987, counsel for defendant informed the court that the monitoring incorporated into the May 6th order revealed that Ferro had achieved thirty consecutive days of compliance with the Act. There has been no indication from the parties that compliance is not continuing. From these facts, a single conclusion is drawn: the earlier sanctions achieved the result intended and any further sanctions could only serve to punish the defendant for acts which the court trusts will not be repeated.

It is, therefore, concluded that defendant's motion for reargument of this court's May 6th order will be denied and defendant is directed to comply with all of the terms of that order, to the extent they have not already been complied with, forthwith. Plaintiff's motion for summary judgment and for civil penalties for the violations

occurring on March 15, 30th and 31st, and April 4th and 5th will be granted and a fine for each violation assessed at $500.00. Plaintiff's motion for further contempt sanctions will be denied without prejudice.