933 F.2d 1012
 UNPUBLISHED DISPOSITION
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION,
Central States, Southeast and Southwest Areas
Health and Welfare Fund and Howard
McDougall, trustee, Plaintiffs-Appellees,
v.
Christopher JANSEN, Defendant-Appellant.
 No. 89-2802.
 United States Court of Appeals, Seventh Circuit.
 Argued June 7, 1990.
Decided May 22, 1991.
 
 Before COFFEY and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 
 ORDER
 
 1
 On July 25, 1989, the district court found Christopher Jansen in contempt of the court's May 12, 1989, preliminary injunction, and fined him $31,500.00 in compensatory damages together with attorney's fees and costs of $12,185.00. Jansen appeals the contempt order, arguing that the underlying court order was invalid, he made a good faith attempt at complying with the underlying court order and Central States waived its right to enforce the preliminary injunction. We affirm.
 
 I.
 
 2
 Central States Southeast and Southwest Areas Pension Fund and Central States Southeast and Southwest Areas Health and Welfare Fund are the employee benefit funds that received contributions from Express Freight Lines, Inc. pursuant to collective bargaining agreements negotiated between Express Freight Lines and local unions affiliated with the International Brotherhood of Teamsters. Both the pension plan and ERISA require Central States to attribute pension credits to employee accounts and pay pension benefits to employees of Express Freight Lines regardless of whether Express Freight Lines made the requisite contributions. Likewise, the Health and Welfare Fund must continue to pay covered claims submitted by employees of Express Freight Lines (unless or until Express Freight Lines is placed on a suspension of benefits status) out of its funds regardless of whether Express Freight Lines pays the corresponding contributions.
 
 
 3
 Federated Freightways, Inc. acquired Express Freight Lines in December of 1988. At that time Express Freight Lines was substantially in arrears on payments to Central States, and Express Freight Lines claimed it was unable to pay the amount due and owing in a lump sum. Central States filed suit January 20, 1989, to recover past due balances, but it opened negotiations with Express Freight Lines rather than serving process. During negotiations over retiring the debt, Express Freight Lines agreed to make weekly payments for current contributions as well as for sums past due. Additionally, Express Freight Lines agreed to give Central States a mortgage on a piece of real estate as security for the past due debt, but when Central States sent mortgage documents to Express Freight Lines, Express Freight Lines failed to sign and return them. Express Freight Lines made the agreed payments until the latter part of April 1989. The payment due April 21 was returned from the bank for insufficient funds; the payment due April 28 was received on May 4 and was returned for insufficient funds; the payment due on May 5, 1989, was received May 12, and it also was returned from the bank for insufficient funds.
 
 
 4
 On May 10, 1989, Central States' original complaint and motion for a preliminary injunction were served on Express Freight Lines and set for hearing on May 12. Express Freight Lines failed to appear at the hearing, and the district court granted a preliminary injunction, stating:
 
 
 5
 "The Defendant, its agents, servants, employees, attorneys and all persons in active counsel and participation with it, pending the final hearing and determination of this action, are ordered to pay the contributions owed for the month of April, 1989 by 4:30 p.m. on May 15, 1989 and are ordered to pay on the Friday of each calendar week (beginning on May 12, 1989) an amount equal to contributions owed to the Pension and Health and Welfare Funds for such week, said weekly payments to continue as long as this case is pending."
 
 
 6
 Personal service of the preliminary injunction was made on Thomas H. Kritner, the president of Express Freight Lines, on May 12 and on Jansen May 15, but Express Freight Lines failed to comply with the injunctive order. On May 17, 1989, Central States served personal notice on Express Freight Lines and on Kritner of a "Motion for Rule to Show Cause Why Express Freight and Thomas H. Kritner Should Not Be Held in Contempt." At a May 30, 1989, hearing on the motion to show cause, Central States learned for the first time that Jansen was responsible for and did determine the priority for the payment of Express Freight Line's bills.
 
 
 7
 Meanwhile, on May 17, 1989, Central States' attorney met with Jansen and Gilbert K. Granet, Jansen's co-owner of Federated Freightways, to negotiate a settlement. On the following day Central States' attorney and Granet met again (without Jansen), and they attempted to negotiate once more but came to an impasse. At the end of their bargaining session, Granet said,
 
 
 8
 A: "something like ... since we could not move on what the payment was, I said we'd have to settle in court.
 
 
 9
 Q: Did you communicate this impasses to Mr. Jansen?
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 A: I am sure I most likely commented either that day or the next day to Mr. Jansen."
 
 
 13
 On June 16, 1989, Central States filed another motion to show cause, this time entitled "Motion for Rule to Show Cause Why Christopher Jansen Should Not Be Held in Civil Contempt of Court." The same day Express Freight Lines filed for protection from its creditors under Chapter 11 of the Bankruptcy Code, and the district court stayed the civil contempt proceeding against Express Freight Lines. The court held a hearing on the motion to show cause against Jansen on July 17, 1989. The district judge entered a contempt order against Jansen on July 25, 1989, imposing a compensatory fine of $31,500.00 and attorney fee's and costs of $12,185.00.
 
 
 14
 Jansen initially argues that the district court erred in issuing the preliminary injunction order, since Central States had an adequate remedy at law (apparently because Express Freight Lines possessed an unencumbered piece of real estate). This is a collateral attack on the underlying order for the contempt proceeding and may not be contested on appeal from a civil contempt citation.
 
 
 15
 "It would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the controversy. The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience."
 
 
 16
 United States v. Rylander, 460 U.S. 752, 756-57, 103 S.Ct. 1548, 1552 (1983) (quoting Maggio v. Zeitz, 335 U.S. 56, 69, 68 S.Ct. 401, 408 (1948)). Express Freight Lines could have challenged the preliminary injunction in the district court, since it had notice that the proceeding was about to occur; furthermore, the preliminary injunction could have been appealed pursuant to 28 U.S.C. Sec. 1292(a)(1).[1] Thus, we decline to consider Jansen's arguments regarding the validity of the underlying order.
 
 
 17
 Jansen further argues that the district court abused its discretion in finding him in contempt because the court neglected to consider Jansen's good faith attempts at complying with the order. Jansen somehow finds a "good faith" effort to comply with the preliminary injunction in his negotiations with Central States over how to retire the debt. The injunction, however, required Express Freight Lines (Jansen) to make payments to Central States. Negotiating a settlement with a party, in this case Central States, fails to constitute making payments. We have held that a district court
 
 
 18
 "may find a party in civil contempt if he has not been 'reasonably diligent and energetic in attempting to accomplish what was ordered.' ... 'a district court's decision on a contempt proceeding "is discretionary in character and is not to be reversed except for abuse of such discretion or unless clearly erroneous." ' "
 
 
 19
 Stotler and Co. v. Able, 870 F.2d 1158, 1163 (7th Cir.1989) (citations omitted). During the period for which the district court found Jansen in contempt for failing to pay Central States as directed in the preliminary injunction, Express Freight Lines was receiving some $240,000.00 per week in income, and Jansen supervised the payment of over 100 checks to other creditors. Under these circumstances, we do not agree that Jansen or Express Freight Lines made a good faith effort to comply with the district court's order. We are of the opinion that the district court did not abuse its discretion in holding Jansen in contempt for refusing to comply with the order.
 
 
 20
 Finally, Jansen contends that Central States waived its right to enforce the May 12, 1989, preliminary injunction on May 17, 1989, when it entered into negotiations with Express Freight Lines over payments. He asserts that
 
 
 21
 "[i]f an entity with a court order requiring payment intended compliance with the order, it is only reasonable to assure [sic] that entity would first demand such compliance before proceeding to negotiate. Any other conduct simply evidences a waiver of that right or a desire to obtain something more, than just the order from Express."
 
 
 22
 Jansen cites no law for this proposition, and we are aware of none. Moreover, this argument is spurious in view of the fact that Jansen should have realized that Central States intended to enforce the injunction, since Express Freight Lines and its president were personally served with Central States' "Motion for Rule to Show Cause Why Express Freight and Thomas H. Kritner Should Not Be Held in Contempt" on the day Jansen and his partner entered into negotiations with Central States. Additionally, at the end of the second day of negotiations after the parties had reached an impasse, Jansen's partner stated that they would have to settle the issue in court. Thus, we disagree that Central States engaged in conduct that could have reasonably lulled Jansen into thinking that he did not have to comply with the court's order. Central States did not waive its right to enforce the preliminary injunction when it entered negotiations with Jansen.
 
 
 23
 The order of the district court holding Christopher Jansen in contempt is
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 If the preliminary injunction had been a non-appealable order, then it could be challenged on appeal from a contempt citation. See Marrese v. American Academy of Orthopedic Surgeons, 726 F.2d 1150, 1157 (7th Cir.1984), but we will not review the underlying order when it could have been appealed initially