**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**TWELVE PIECES OF REAL PROPERTY WITH ALL APPURTENANCES, T17NR5W, Section 33, Seward Prime Meridian, Alaska, Tract A, et al., Defendant,**

**and**

**Gerald Frank Plunk, Defendant—Appellant.**

**United States of America,**
**Plaintiff—Appellee,**

v.

**Twelve Pieces Of Real Property With All Appurtenances, T17NR5W, Section 33, Seward Prime Meridian, Alaska, Tract A, et al., Defendant,**

**and**

**Gerald Frank Plunk, Defendant—Appellant.**

Nos. 98–35702, 98–36055.
D.C. No. CV–96–00335–JWS.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 12, 2002.

Decided Jan. 10, 2003.

Before BEEZER, GOULD and BERZON, Circuit Judges.

MEMORANDUM *

Gerald Plunk appeals from the district court's grant of summary judgment and order of forfeiture. We affirm in part, reverse in part, and remand. Because the facts are familiar to the parties, we recount them only as necessary to explain our decision.

The only properties at issue in this appeal are a 1975 SuperCub airplane, $5,000 in a vacuum-packed, heat-sealed bag, $50,000 substituted for Plunk's Big Mountain Lodge, and the Hock Lake property. The district court held that all four of these items were subject to civil forfeiture pursuant to 21 U.S.C. § 881(a). 21 U.S.C. § 881(a) provides for forfeiture of all property (both real and personal), including money, that was used to facilitate drug trafficking or is traceable to proceeds from drug trafficking. *See* 21 U.S.C. § 881(a). Plunk makes several arguments against the validity of any civil forfeiture order in his circumstances.

First, Plunk argues that because he has already been convicted for drug trafficking, the Double Jeopardy Clause of the Fifth Amendment prevents him from being punished again through a civil forfeiture action. Civil forfeiture actions under 21 U.S.C. § 881, however, are not punitive for Double Jeopardy purposes. *United States v. Ursery*, 518 U.S. 267, 290–92, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).

Second, Plunk maintains that the government has created a Hobson's choice for him by forcing him either to invoke his

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Fifth Amendment right against self-incrimination in the forfeiture proceedings and risk losing his property or to testify in the proceedings and risk providing evidence which could be used against him in future criminal proceedings or his pending habeas petition. We find this argument unconvincing. Plunk was not required to testify during the forfeiture proceedings. Nor was it necessary for Plunk to testify in order to defend his property. He could have presented, through other witnesses, testimonial or documentary evidence demonstrating his ownership of the property in question and the absence of any connection between the property and drug transactions. Therefore, his Fifth Amendment rights are not implicated. *See Doe v. United States*, 487 U.S. 201, 206, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988) (stating that the Fifth Amendment privilege against self-incrimination only applies to the witness testifying and does not "proscribe incriminating statements elicited from another.")

Finally, Plunk argues that the government has not established probable cause sufficient to warrant forfeiture of the properties. With this contention we agree in part.

Under the law applicable at the time the forfeitures in the case occurred, the government had to meet only "the initial burden of establishing probable cause connecting the seized property with illegal drug transactions." *United States v. Currency, U.S., $42,500*, 283 F.3d 977, 980 (9th Cir.2002); *see also* 21 U.S.C. § 881(d); 19 U.S.C. § 1615. Once the government met this burden, the burden shifted to the claimant to prove by a preponderance of the evidence that the property or money was not connected with drug activity. *United States v. $93,685.61 in U.S. Currency*, 730 F.2d 571, 572 (9th Cir.1984) (citing *United States v. One 56–Foot Yacht*

*Named Tahuna*, 702 F.2d 1276, 1281 (9th Cir.1983)); *see also Ursery*, 518 U.S. at 289; *United States v. $80,180.00 in U.S. Currency*, 303 F.3d 1182, 1184 (9th Cir. 2002).

Instead of presenting evidence in his favor during the forfeiture proceedings, Plunk remained silent, invoking his Fifth Amendment right against self-incrimination. Assertion of one's Fifth Amendment rights is not a substitute for evidence. *See United States v. Rylander*, 460 U.S. 752, 761, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983). Therefore, if the government has established probable cause sufficient to warrant forfeiture as to a particular piece of the property, then forfeiture of that property must be affirmed. *See United States v. $129,727 U.S. Currency*, 129 F.3d 486, 491–94 (9th Cir.1997) (holding that forfeiture of property solely based on a showing of probable cause by the government is constitutional when the claimant presents no evidence on his behalf); *see also $80,180.00*, 303 F.3d at 1184–86 (holding that the heightened burden of proof established by the Civil Asset Forfeiture Reform Act of 2000, Pub.L. No. 106–185, 114 Stat. 202 (2000), does not apply retroactively).

Probable cause can only be established with evidence that existed at the time the government filed the forfeiture complaint. *United States v. $405,089.23 U.S. Currency*, 122 F.3d 1285, 1289 (9th Cir.1997) (citing *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1071 (9th Cir. 1994)). The government filed its forfeiture complaint for the SuperCub airplane on September 8, 1994. The forfeiture complaint for the other three pieces of property was not filed until September 16, 1996, approximately one month after Plunk's conviction. Therefore, the fact of his conviction and the testimony and evidence presented at trial can be considered in the

probable cause inquiry only with regard to the $5,000 cash, the $50,000 (substituted for the Lodge), and the Hock Lake property.

We conclude as follows regarding the various pieces of property:

1. The district court found that probable cause existed for the forfeiture of the $5,000 in a heat-sealed package. We agree. The $5,000 was found in a safe in Plunk's Longbow residence behind a false wall. The cash was inside a vacuum-packed, heat-sealed container. The heat-sealed container indicates that the money is related to drug activities. Such containers are used to disguise the scent of drugs on the currency in order to prevent sniffer dogs from alerting to the money. *See, e.g.,* $42,500, 283 F.3d at 982; $129,727.00, 129 F.3d at 488, 491. Three of Plunk's drug couriers also testified at trial that they received cash from Plunk in such heat-sealed packages. This testimony further supports probable cause to find that the money was the proceeds of or used to facilitate drug transactions.

2. The district court found probable cause for forfeiture of the $50,000 substituted for the Big Mountain Lodge. Again, we agree. Evidence at trial suggested that Plunk used the Lodge in his cocaine trafficking activities. One witness testified that he sent cocaine to Plunk via U.P.S. and Federal Express in packages addressed to the Lodge. Another witness stated that Plunk would make fictitious reservations at the Lodge and then send cash from drug transactions to the Lodge as deposits for these fictitious guests. In addition, the heat-sealing equipment was bought in the name of the Lodge and the equipment was stored there. This evidence establishes probable cause to connect Big Mountain Lodge to Plunk's drug transactions.

3. The district court also found probable cause for the forfeiture of the Hock Lake property. We cannot determine from the current record whether the government has met its initial burden of establishing probable cause linking the Hock Lake property to the drug trade.

The only possibly sufficient evidence is Pierson's 1997 affidavit. This affidavit was given after the filing of the forfeiture complaint. The district court relied upon the Pierson affidavit in its decision as the principal basis for finding that the government had probable cause.

We cannot tell from the record whether the government knew the information contained within the Pierson affidavit at the time the forfeiture complaint was filed, or whether it obtained that information thereafter. Plunk did not object to consideration of the affidavit in the determination of probable cause on grounds that the government did not have the information contained therein when the forfeiture complaint was filed (although he did contest probable cause on other grounds). The fact remains, however, that on the present record, we cannot affirm the probable cause finding, as we cannot tell whether the requisite legal standard was met. We therefore remand to the district court for a determination of when the government knew the information related to the Hock Lake property contained within Pierson's affidavit. *Cf.* $405,089.23, 122 F.3d at 1291–92 (allowing remand for government to establish when it knew information because standard requiring sufficient evidence of probable cause at the time of filing of forfeiture complaint was not established until after government filed its summary judgment motion).

4. Finally, the district court found probable cause for the forfeiture of the SuperCub. We disagree. The forfeiture complaint against the SuperCub was filed

in 1994. The evidence thereafter obtained at trial, and the conviction itself, are all inadmissible in the probable cause determination.

The government relies on several other bases for connecting the SuperCub to the drug trade. The first is the allegation that Plunk paid for the airplane in cash. Payment in cash on its own is not sufficient to establish a connection to a drug transaction. We have previously held that a large amount of money standing alone cannot establish probable cause. *$42,500*, 283 F.3d at 981–82 (citing *$191,910*, 16 F.3d at 1072). Similarly, large cash payments absent any other proof of a "connection between that cash and illegal drug transactions" is insufficient to establish probable cause. *$405,089.23*, 122 F.3d at 1289. Such payments may indicate some illegal transaction, but not necessarily one related to narcotics. *See id.* ("[A] mere suspicion that the money is connected to some illegal activity is not enough to establish probable cause that the money was connected to drugs.") (quoting *United States v. U.S. Currency $30,060.00*, 39 F.3d 1039, 1044 (9th Cir.1994).

The government also asks us to consider allegations that Plunk used airplanes to smuggle drugs. In particular, the Zeznock affidavit mentions Plunk's use of a Piper Navajo aircraft to transport cocaine. The fact that someone is a drug smuggler and uses certain airplanes in the operation does not mean that a different airplane owned by the smuggler is used to transport drugs. Especially in Alaska, there are legitimate reasons for Plunk to use and own planes. The government therefore must establish a connection between the particular property at issue, the SuperCub, and drug trafficking. Zeznock's affidavit does not provide any evidence specifically linking the SuperCub to narcotics. Thus, even if the information in the 1996 Zez-

nock affidavit was known at the time of the filing of the 1994 forfeiture complaint, it is insufficient to establish probable cause for the forfeiture of the SuperCub.

Finally, the government points to Pierson's statement in his affidavit that "I *think* Plunk obtained this plane ... in exchange for 1 or 2 kilos of cocaine." (Emphasis added). Even if the government had this information from Pierson in 1994, it is insufficient to establish probable cause. Elsewhere in his affidavit Pierson makes numerous definitive statements such as "I know" and "Plunk obtained property ... in exchange for cocaine" without any qualification. In this context, the less certain "I think" is not enough to establish probable cause. Each side shall bear its own cost.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.