

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-8-2005

# USA v. Gippetti

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4122

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Gippetti" (2005). *2005 Decisions.* Paper 252.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/252

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-4122

_____

UNITED STATES OF AMERICA

v.

JEROME GIPPETTI,
                                        Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil 04-cv-00522
District Judge:  The Honorable Katharine S. Hayden

_____

Argued:  September 13, 2005

_____

Before: SLOVITER, BARRY, and SMITH, <u>Circuit Judges</u>

_____

(Opinion Filed: November 8, 2005)

_____

Richard J. Sapinski, Esq. (Argued)
Steven R. Rowland, Esq.
Sills, Cummis, Epstein & Gross
One Riverfront Plaza
Newark, NJ 07102

<u>Counsel for Appellant</u>

Randolph L. Hutter, Esq. (Argued)
Gilbert S. Rothenberg, Esq.
Paula K. Speck, Esq.
Frank P. Cihlar, Esq.
United States Department of Justice
Tax Division
P.O. Box 502
Washington, D.C. 20044

<u>Counsel for Appellee</u>

———

OPINION

———

BARRY, <u>Circuit Judge</u>

A civil investigation was commenced by the Internal Revenue Service ("IRS") into the 1999 and 2000 federal income tax liabilities of appellant Jerome Gippetti and his late wife. On February 6, 2003, the IRS issued a summons demanding that Mr. Gippetti appear before an IRS agent to provide testimony and produce records pertaining to his bank and credit card accounts with the Cayman National Bank, Ltd ("CNB").[1] After Gippetti failed to comply, the IRS initiated this action to enforce the summons.

_____

[1] Among other things, the summons required him to produce, for the years 1999 and 2000, account applications, loan applications, monthly or periodic bank statements, passbooks, and cancelled checks for the CNB account, as well as the card application, monthly or periodic charge statements, charge receipts, and cash advance confirmations for, but not limited to, a CNB issued Master Card. Initially, the IRS was aware of only one CNB Master Card, but later discovered a second CNB Master Card.

Gippetti had reported interest income from the CNB account on the 1999 and 2000 federal income tax returns, and had disclosed the existence of the account on forms entitled "Reports of Foreign Bank and Financial Accounts" filed with the IRS. The IRS became aware of Gippetti's two CNB credit card accounts as a result of its Offshore Credit Card Project.[2] While Gippetti did not dispute the existence of these accounts, he denied that he possessed or had control over the records sought by the IRS. Moreover, in a somewhat inconsistent argument, Gippetti argued that any compelled production by him (of records he claimed he could not, in any event, produce) would constitute a testimonial "act of production" which would infringe upon his Fifth Amendment rights.

The District Court heard argument on April 19, 2004, and, on August 2, 2004, issued an order requiring Gippetti to "produce the documents relating to those bank and credit card accounts at the [CNB] that the parties do not dispute are [Gippetti]'s accounts." App. 2. The Court ordered that Gippetti make this production "by whatever

---

[2] See Internal Revenue Service, http://www.irs.gov/privacy/article/ 0,,id=131233,00. html (last visited Sept. 19, 2005). "OCCP is an initiative aimed at bringing back into compliance with U.S. tax laws participants who used 'offshore' payment cards or other offshore financial arrangements to mask or shelter their income. The IRS used judicial John Doe summonses to request information from three credit card companies (VISA, MasterCard, and American Express) regarding individuals who may have participated in offshore credit card scams. The IRS also summoned information from a Florida credit card processor, Credomatic, that services banks located in Caribbean tax haven countries. The goal is to identify US persons from offshore card transactions. A vendor queries the data and compares it against Name Search Facility (NSF) and Information Return Master File (IRMF) data. If a Taxpayer Identification Number (TIN) is found, the data is sent in an Excel spreadsheet through encrypted email to the Philadelphia campus, OCCP Unit. The spreadsheet is printed out and used by OCCP Unit personnel."

means." *Id.* It further noted, in a somewhat cryptic remark, that "[t]here is no issue for the Court to resolve regarding petitioner's Fifth Amendment rights." App. 3. On August 6, 2004, the Court issued a detailed final order.[3] This appeal followed.[4]

Subsequent to the issuance of the District Court's final order, Gippetti voluntarily executed and sent to CNB a written "consent directive" in which he requested copies of the CNB records the government was seeking; there is no suggestion that the consent directive was compelled. In his letter of August 16, 2004, Gippetti stated that he was making the request in order to comply with the August 2, 2004 order of the District Court that he produce those records. He added that he "currently" did not have any of the records in his possession and did not have them in his possession any time since the summons was served on him. App. 204. By letter dated August 27, 2004, CNB refused Gippetti's request on the ground that a "'consent' under pain of penal sanction(s) does not constitute consent within the meaning of" Cayman Islands law. App. 205-06.[5]

## DISCUSSION

---

[3]For reasons that are unclear, the August 6 order was not entered onto the docket until August 27.

[4]Although the District Court also denied certain relief requested by the government, the government has not cross-appealed.

[5]This response was apparently anticipated by the government, and likely by Gippetti as well. During the April 19 argument, the government noted that "we do not want a consent directive . . . The bank is under no compulsion to respond. We don't want it because the bank – because we don't have any jurisdiction over the offshore bank." App. 30.

4

Gippetti calls this an "act of production" case, but says he does not have the records the government wants him to produce and has no control over getting them from CNB, as evidenced most recently by CNB's rejection of the consent directive he submitted to it. Parenthetically, he does not dispute, nor could he reasonably do so, that banks, including CNB, generate and, indeed, send to their customers monthly statements and the like and does not argue that, in 1999 and 2000, he did not, in fact, receive those statements and some or all of the other records sought by the government.

Gippetti raised the defense of lack of possession and/or control in the enforcement proceeding. *See United States v. Rylander*, 460 U.S. 752, 757 (1983) ("[A] proceeding to enforce an IRS summons is an adversary proceeding in which the defendant may contest the summons 'on any appropriate ground.' [L]ack of possession or control of the records is surely such a ground . . . .") (citations omitted). The District Court, however, did not explicitly decide the issue, although its final order necessarily contained an implied finding that any defense of lack of possession or control had not been sustained.

More, however, was required. Given the enforcement order, a civil contempt action can and probably will ensue if Gippetti does not produce the records he was ordered to produce. He cannot, however, in a contempt proceeding, litigate or relitigate the issue of whether he possessed or had control over the relevant records at the time of the order to produce. *Rylander*, 460 U.S. at 456-57. As the Court of Appeals for the Second Circuit explained,

5

> Issuance of an enforcement order constitutes an adjudication that the respondent possesses and is able to produce the summoned documents at the time the order is issued. Thereafter, the respondent must produce the documents or face contempt proceedings in which he is foreclosed from claiming nonpossession at the time of the enforcement order. . . Because of its potentially drastic consequences, however, an enforcement order in a contested proceeding should not rest on a determination of possession that is merely implicit. Before ordering production on penalty of contempt, the district court should expressly determine that the respondent possesses the summoned documents.

*United States v. Barth*, 745 F.2d 184, 187 (2d Cir. 1984) (citation omitted). Finding that the issue of possession is complex and fact-sensitive, the Court vacated the relevant portion of the enforcement order and remanded the proceeding to enable the District Court to rule explicitly on the defense of nonpossession.

We, too, believe that an express determination of possession or control is required. If the District Court determines that Gippetti does not possess or have control over the records the government is seeking – and it is Gippetti's burden – enforcement should be denied. If, however, the Court determines that he does possess or have control over those records, failure to produce the records will be on pain of contempt.

In anticipation, however, of a renewed "act of production" defense if, on remand, production is ordered, we offer the following observations. There can be no question – and Gippetti does not seriously dispute – that most or all of the CNB records at issue here exist, that the government knows they exist, and that they are located at CNB. Indeed, Gippetti has acknowledged that he maintains the specific bank account at issue and the credit cards tied to that account, as evidenced by his reported interest income, forms he

6

filed with the IRS, and the consent directive he voluntarily signed. He also concedes that the consent directive was non-testimonial because it asked CNB, not him, "to locate, retrieve and collect" the relevant records. (App. Br. at 26). He argued, however, that because CNB refused his request and the government cannot obtain the records through independent sources, requiring him "to locate, retrieve and collect" them *would* be testimonial because he would be required to do the IRS's "leg-work and thinking." App. Reply Br. at 23.

It has long been established that "the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a testimonial communication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408 (1976). This case is much like *Fisher*, in which the Court rejected the taxpayer's claim that working papers prepared by the taxpayer's accountant that the IRS knew were in the possession of the taxpayer's attorney were protected by the Fifth Amendment.

> The papers belong to the accountant, were prepared by him, and are the kind usually prepared by an accountant working on the tax returns of his client . . . The existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers.

425 U.S. at 411.

So, too, here, it will involve no thinking by Gippetti or reveal any contents of his mind to simply turn over to the government whatever records CNB were to give to him,

and mere turnover will surely not authenticate them. *See Doe v. United States*, 487 U.S. 201, 218 (1988) ("[T]he only factual statement made by anyone will be the *bank's* implicit declaration, by its act of production . . ., that *it* believes the accounts to be petitioner's") (emphasis in original)); *see also Fisher*, 425 U.S. at 413 ("[P]roduction would express nothing more than the taxpayer's belief that the papers are those described in the subpoena . . . The taxpayer would [not be] competent to authenticate the accountant's work papers or reports . . . The taxpayer did not prepare the papers and could not vouch for their accuracy").[6] Stated somewhat differently, for Gippetti to produce the CNB records would have no testimonial significance, and any Fifth Amendment claim would be without merit.[7]

## CONCLUSION

That part of the order of the District Court entered on August 27, 2004 enforcing the summons will be vacated and this matter remanded for further proceedings consistent with this Opinion.

---

[6]Whether the government can otherwise authenticate the records has no bearing on whether Gippetti has a valid Fifth Amendment claim.

[7]Given this conclusion, we need not reach the issue of whether Gippetti waived any Fifth Amendment claim as to the CNB records.

8