932 F.2d 1572
 60 USLW 2120, 20 Fed.R.Serv.3d 754, RICO
Bus.Disp.Guide 7789
 Tony AVIRGAN and Martha Honey, Plaintiffs-Appellants,
v.
John HULL, Adolfo Calero, Robert Owen, John K. Singlaub,
Ronald Joseph Martin, Sr., James McCoy, Rafael "Chi Chi"
Quintero, Mario Delamico, Thomas Clines, Theodore Shackley,
Albert Hakim and Richard Secord, Defendants-Appellees,
Bruce Jones, et al., Defendants.
Tony AVIRGAN and Martha Honey, Plaintiffs-Appellants,
v.
John HULL, Moises (Dagaberto) Nunez, Jorge Gonzalez, Adolfo
Calero, Robert W. Owen, Thomas Posey, John K. Singlaub,
Ronald Joseph Martin, James McCoy, Rafael "Chi Chi"
Quintero, Mario Delamico, Thomas Clines, Theodore Shackley,
Albert Hakim and Richard Secord, Defendants-Appellees,
Rene Corbo, et al., Defendants.
Tony AVIRGAN and Martha Honey, Plaintiffs-Appellants,
Daniel P. SHEEHAN and The Christic Institute, Non-Party-Appellants,
v.
John HULL, Moises (Dagaberto) Nunez, Jorge Gonzalez, Adolfo
Calero, Robert W. Owen, John Singlaub, James McCoy, Ronald
Joseph Martin, Sr., Rafael "Chi Chi" Quintero, Mario
Delamico, Thomas Clines, Theodore Shackley, Richard Secord,
and Albert Hakim, Defendants-Appellees,
Rene Corbo, et al., Defendants.
Tony AVIRGAN and Martha Honey, Plaintiffs-Appellants,
Daniel P. SHEEHAN and the Christic Institute, Non-Party-Appellants,
v.
John HULL, Moises (Dagaberto) Nunez, Jorge Gonzalez, Adolfo
Calero, Robert W. Owen, Thomas Posey, John Singlaub, James
McCoy, Ronald Joseph Martin, Sr., Rafael "Chi Chi" Quintero,
Mario Delamico, Thomas Clines, Theodore Shackley, Richard
Secord, and Albert Hakim, Defendants-Appellees,
Rene Corbo, et al., Defendants.
 Nos. 88-5720, 89-5143, 89-5232 and 89-5515.
 United States Court of Appeals,
Eleventh Circuit.
 June 18, 1991.
 
 Eugene R. Scheiman, argued, New York City, Lanny A. Sinkin, Joann Royce, Lewis Pitts, The Christic Institute, Washington, D.C., for Avirgan, Honey, and The Christic Institute.
 Morton Stavis, Center for Constitutional Rights, New York City, for Daniel Sheehan.
 Daniel Sheehan, pro se.
 Thomas Hylden, argued, Leonard C. Greenebaum, Baker & Hostetler, Washington, D.C., for Robert W. Owen.
 Jack McKay, argued, Jane M. Sullivan, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., for Theodore Shackley.
 Appeals from the United States District Court for the Southern District of Florida.
 Before HATCHETT and BIRCH, Circuit Judges, and RONEY, Senior Circuit Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 Two journalists, their lawyers, persons and entities associated with the journalists and lawyers, in this consolidated appeal involving the Nicaraguan Contra affair, seek reversal of the district court's orders granting summary judgment against them and imposing sanctions in excess of one million dollars. We affirm the district court.
 
 FACTS
 
 2
 On May 30, 1984, Tony Avirgan and his wife, Martha Honey, appellants, who are American journalists based in Costa Rica and cover Central America for various news agencies, attended a press conference of Contra leader Commandant Eden Pastora at the campground of the Southern Contra Force in La Penca, Nicaragua. About thirty journalists traveled to the guerilla campground. At the press conference, a bomb exploded killing eight people and wounding numerous others. Avirgan and Honey allegedly suffered personal injuries, damages to television camera equipment, loss of business due to the bombing, and loss of consortium. Avirgan and Honey claim that the bombing was the product of a criminal racketeer influenced and corrupt organization (RICO) enterprise consisting of the appellees with the goal of overthrowing the government of Nicaragua.[1] The appellees include alleged Central Intelligence Agency operatives, military intelligence personnel, arm merchants, mercenaries, and Colombian drug lords. Most of the allegations are based geographically in Nicaragua, but some allegations accuse various appellees of anti-Communist operations in Cuba, Southeast Asia, Iran, and Libya.
 
 
 3
 Chief Judge James Lawrence King, in his thorough opinion, summarized Avirgan and Honey's theory of their case as follows:
 
 
 4
 It is the theory of plaintiffs' case that the defendants established an enterprise, the purpose of which was to violate the principles espoused in the Neutrality Act and that all of the alleged patterns of racketeering activity were performed to promote the goal of this enterprise. Central to the alleged violations of each subsection of Sec. 1962 is the plaintiffs' purported Neutrality Act enterprise. The plaintiffs allege that in May, 1983 the defendants Francisco Chanes, Moises Nunez, Hector Cornillot, Rene Corbo and Felipe Vidal Santiago established an enterprise. The purpose of the enterprise was to launch a Cuban/American mercenary expeditionary force against the Republic of Nicaragua, from Costa Rica, along the 'Southern Front.'
 
 
 5
 The plaintiffs also contend that these defendants established a cocaine smuggling operation through Costa Rica to finance the workings of this enterprise in violation of the Neutrality Act. 18 U.S.C. Sec. 960 (1986). It is asserted that the original purpose of these individuals was to assist an indigenous Nicaraguan group, the Revolutionary Democratic Alliance ('ARDE').
 
 
 6
 The ARDE was engaged in guerilla attacks against Nicaragua under the leadership of Eden Pastora. The plaintiffs maintain that sometime after this original joinder of forces the enterprise decided to remove Pastora as leader of ARDE in order to merge ARDE into alliance with the Honduras based contra group, the Nicaraguan Democratic Force ('FDN') and facilitate its narcotics trafficking in Costa Rica.
 
 
 7
 Avirgan v. Hull, 691 F.Supp. 1357, 1363-64 (S.D.Fla.1988).
 
 PROCEDURAL HISTORY
 
 8
 On May 29, 1986, Avirgan and Honey filed a complaint in the United States District Court for the Southern District of Florida. Avirgan and Honey's racketeering allegations include the following: the attempted murder of Eden Pastora; the murder of eight persons at the press conference in La Penca; the attempted murder of Avirgan at the La Penca bombing; the trafficking of arms and explosives in violation of state and federal law; the transferring of funds from illegal weapons and explosives dealings; the conspiracies to murder Eden Pastora on two occasions; the conspiracy to kidnap informants--Carlos Rojas Chinchilla and a person identified only as "David"; the murder of David; the conspiracy to transport cocaine into the United States; and the conspiracy to murder the United States Ambassador to Costa Rica. The primary allegation, however, is that Amac Galil disguised as a journalist named Per Anker Hansen, detonated the bomb at the La Penca press conference, and acted in concert with the twenty-eight other persons named in the amended complaint.
 
 
 9
 Avirgan and Honey also alleged state law claims which include: battery, loss of consortium, assault, intentional infliction of mental distress, trespass, damage to personal property, and a state RICO claim under Fla.Stat.Ann. Sec. 895.03.
 
 
 10
 In their amended complaint, Avirgan and Honey specified the relevant time period as May, 1983, through May 29, 1986. Thus, for discovery purposes, the court granted the time limit specified plus six months before the first alleged overt act, which occurred in May, 1983. The district court limited discovery to a four-year period covering the relevant alleged conspiratorial time period of December, 1982, until November, 1986. The district court also limited the subject matter discovery to the purchase or sale of military equipment; weapons; or explosives; transactions in illegal drugs; the operation of the alleged Neutrality Act enterprise; and any action resulting in or causing injury to Avirgan and Honey.
 
 
 11
 After two years of discovery, several appellees moved for summary judgment alleging that Avirgan and Honey had failed to state a claim under RICO. In addressing this motion, the district court thoroughly analyzed the evidence Avirgan and Honey presented, in order to determine whether they had shown genuine issues of material fact. Finding much of the evidence inadmissible, the district court ruled that Avirgan and Honey failed to prove that the appellees were the proximate cause of their injuries and granted appellees' motions for summary judgment on the federal and state law claims.[2]
 
 
 12
 The district court, by a subsequent order, granted appellees' motions for costs and attorney's fees, ruling that the abuse of the judicial process required that Avirgan and Honey make the appellees whole by paying the fees the appellees were forced to spend in defending the lawsuit. Moreover, the district court ruled that liability for costs and fees rests jointly and severally with Avirgan and Honey, Daniel Sheehan (Avirgan and Honey's lawyer) and the Christic Institute.[3]
 
 
 13
 On appeal, this court consolidated appellants appeals of the district court's (1) grant of summary judgment; (2) the award of attorney's fees and costs; (3) motions for clarification order; and (4) the clarification order.[4]
 
 CONTENTIONS
 
 14
 Avirgan and Honey contend that the district court ruled improperly in granting summary judgment, in issuing certain orders prior to summary judgment, and in denying relief for cost of injury and equipment due to the bombing. Additionally, Avirgan, Honey, the Christic Institute, and Daniel Sheehan challenge the award of costs and attorneys' fees.
 
 ISSUES
 
 15
 The issues presented on appeal are: (1) whether the district court properly granted summary judgment on the ground that the appellants failed to show that the appellees caused their injuries; (2) whether the district court erred in issuing certain orders prior to summary judgment; and (3) whether the district court erred in awarding attorneys' fees and costs to the appellees.[5]
 
 DISCUSSION
 I. Summary Judgment
 
 16
 Consideration of the district court's grant of summary judgment requires plenary review and application of the same legal standards that bound the district court. Rollins v. TechSouth, Inc., 833 F.2d 1525, 1527 (11th Cir.1987). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(e). A nonmoving party, opposing a motion for summary judgment supported by affidavits cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial. Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir.1986). The evidence presented cannot consist of conclusory allegations or legal conclusions. First National Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).
 
 A. RICO Claim
 
 17
 Avirgan and Honey's RICO claim is founded upon 18 U.S.C. Sec. 1964(c).[6] Thus, they must prove three essential elements: (1) a violation of section 1962; (2) injury to business or property; and (3) that the violation caused the injury. O'Malley v. O'Neill, 887 F.2d 1557, 1561 (11th Cir.1989).
 
 
 18
 Sections 1962(a), (b), and (c) of title 18 make criminally liable those who engage in, or aid and abet another to engage in, a pattern of racketeering activity if they also do the following: invest income derived from the pattern of racketeering activity in the operation of an enterprise engaged in interstate commerce (section 1962(a)); acquire or maintain, through the pattern of racketeering activity, any interest in or control over such an enterprise (section 1962(b)); or conduct, or participate in the conduct of, the affairs of such an enterprise through a pattern of racketeering activity (section 1962(c)). Section 1962(d) makes it a crime to conspire to violate section 1962(a), (b), or (c). [Footnote omitted.]
 
 
 19
 Pelletier v. Zweifel, 921 F.2d 1465, 1495-96 (11th Cir.1991).
 
 1. Evidence
 
 20
 As to the evidence Avirgan and Honey presented, the district court found:
 
 
 21
 The plaintiffs have not made a showing of a genuine issue of material fact with respect to any of their allegations concerning the cause of their purported injuries. Causation is an essential element of a RICO action. Accordingly, the defendants who have moved are entitled to summary judgment.
 
 
 22
 Avirgan, 691 F.Supp. at 1377.
 
 
 23
 Avirgan and Honey argue that they were not obligated to produce evidence gathered during pretrial discovery which demonstrated that Galil had committed the bombing and was a member of the enterprise, that C-4 was an ingredient of the bomb, or that they and their news sources were threatened and had crimes committed against them. We disagree. The evidence Avirgan and Honey presented is scant, almost nonexistent, on the important issue of causation. Avirgan and Honey presented the La Penca Report, a publication they prepared, which concludes that Amac Galil, a/k/a Per Anker Hansen caused the bombing. The district court correctly determined that this evidence was inadmissible.
 
 
 24
 Also, Avirgan and Honey submitted a one-page translation of a five-page document the Costa Rican OIJ prepared. The OIJ, according to Avirgan and Honey, is the Costa Rican equivalent to the United States Federal Bureau of Investigation (FBI). The translation is uncertified, unsigned, and does not conclude that Galil was responsible for the bombing. It merely concludes that debris found at the site of the bombing matched that of a box Galil carried. This evidence is circumstantial, speculative, and of little weight.
 
 
 25
 Avirgan and Honey further argue that because none of the appellees disputed Galil's role in the bombing, summary judgment was improper. According to Avirgan and Honey, although some appellees claim that they did not know Amac Galil or have direct or indirect contact with him, this does not mean that all of the appellees are unassociated with the enterprise. In other words, Avirgan and Honey argue that no one has disproved Galil's existence, or disproved the existence of the enterprise, or disproved Galil's association with the enterprise. Thus, say Avirgan and Honey, the enterprise existed; Galil existed; Galil set off the bomb; and we were injured.
 
 
 26
 Avirgan and Honey note that this circuit has ruled that a RICO enterprise may be an "amoeba-like" structure or a loose informal association. See United States v. Cagnina, 697 F.2d 915, 921 (11th Cir.1983), cert. denied, 464 U.S. 856, 104 S.Ct. 175, 78 L.Ed.2d 157 (1983). We have so held. Nevertheless, Avirgan and Honey presented no evidence to indicate that Galil committed the bombing or was a part of the alleged enterprise. No admissible evidence was ever produced to show that Galil even existed.[7] The evidence completely failed. Galil was never served with a complaint or scheduled for deposition. All parties realized that responsibility for the La Penca bombing was a key issue on summary judgment. Yet, Avirgan and Honey, after years of discovery, brought forth nothing on the causation issue.
 
 
 27
 Likewise, without submitting admissible evidence, Avirgan and Honey alleged that the appellees were liable for threats to and the kidnapping of Carlos Rojas Chinchilla and the murder of "David." According to Avirgan and Honey, Chinchilla and David served as their informants about the bombing. They specifically named Hull, Jones, Corbo, Vidal, Chanes, Nunez, Cruz, Saenz, Posey, Owen, and Palacio as participants in the crimes against David and Carlos, both individually and through agents. Avirgan and Honey assert that only three appellees, Hull, Owen, and Jones, moved for summary judgment.[8] They argue that Owen was in Central America at the time of an execution of a "Sandinista informant" believed to be David. According to Avirgan and Honey, it was Owen's responsibility to demonstrate that the executed Sandinista informant was not David, or prove that he had no knowledge of, or did not condone the execution. It is their theory that the omission of this evidence, which Owen did not produce, should serve as a favorable inference for them. Lampkin v. Liberia Athene Transport Co., Ltd., 823 F.2d 1497, 1499 (11th Cir.1987). This absence of evidence does not result in a favorable inference.
 
 
 28
 Avirgan and Honey further contend that Hull, Jones, Corbo, Vidal, Chanes, Nunez, Cruz, Saenz, Posey, and Owen threatened to murder them because they connected Hull and Vidal to the threats against their family. Again, theories, allegations, and speculation; but, no evidence.
 
 2. Causation
 
 29
 In a civil RICO action, the plaintiff must prove that the criminal conduct in violation of section 1962 directly or indirectly injured the plaintiff's business or property. Haroco v. American Bank & Trust Co. of Chicago, 747 F.2d 384, 398 (7th Cir.1984), aff'd, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).
 
 
 30
 Avirgan and Honey emphasize that the district court was required to provide them with notice of its intention to consider the causation issue, and it did not do so. We reject this argument. Appellees' numerous summary judgment motions presented the causation issue. For example, Owen's summary judgment motion asserted that no evidence supported the theory that Galil was linked to the bombing or to the alleged enterprise. In this motion, Owen also challenged whether any evidence supported the kidnapping of Chinchilla, the kidnapping and threatening of David, the threats to murder (Chinchilla, David, Avirgan, Honey), and the attempted assassination of Pastora.
 
 
 31
 In practically every motion for summary judgment, the appellees asserted that they had no involvement, directly or indirectly, in the La Penca bombing, that they were not the cause of any of the injuries, and that they were not and had never been members of an alleged enterprise. The appellees' affidavits, answers to interrogatories, and depositions put Avirgan and Honey on notice that causation was a principal issue. Consequently, the district court acted properly in granting summary judgment on the ground that Avirgan and Honey failed to prove that the appellees caused the injuries.
 
 
 32
 Avirgan and Honey's additional allegation is that Galil used C-4 explosives in the La Penca bombing. For this assertion, they rely upon the deposition of Fernando Cruz Castro. The district court found that Avirgan and Honey evidently asked Cruz Castro to recall a letter or some other writing which suggested that Per Anker Hansen (Galil) committed the La Penca bombing. Cruz Castro's affidavit seeks to recite the contents of the letter or other writing from memory. The district court found, and we agree, that Cruz Castro's affidavit was not admissible. No other evidence linked Galil or any appellee to C-4 explosives.
 
 B. Discovery
 
 33
 Avirgan and Honey also contend that the district court erred in granting summary judgment because the appellees had not complied with discovery requests or the court's orders compelling discovery. The record does not support this contention. All appellees, except Corbo, submitted affidavits, answered interrogatories, and/or provided sworn depositions denying responsibility, directly or indirectly, for the La Penca bombing. Owen, Singlaub, and Calero gave lengthy and complete depositions; Hull and Secord gave incomplete depositions because of Avirgan and Honey's delay in setting dates; Posey, Quintero, and Hakim invoked their fifth amendment privilege; Shackley and Clines were never noticed for deposition. All appellees served with interrogatories responded, and all appellees who moved for summary judgment submitted sworn affidavits. Furthermore, Avirgan and Honey had the benefit of public information generated by the Iran/Contra affair, including the extensive testimony of Secord, Hakim, Owen, Singlaub, Calero, and numerous other witnesses in public hearings.
 
 
 34
 In this RICO proceeding which involves some alleged criminal activity, Avirgan and Honey should have anticipated that some appellees would impose their fifth amendment rights. Invocation of the fifth amendment privilege did not give rise to any legally cognizable inferences sufficient to preclude entry of summary judgment. The negative inference, if any, to be drawn from the assertion of the fifth amendment does not substitute for evidence needed to meet the burden of production. United States v. Rylander, 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983). Most importantly, Avirgan and Honey did not demonstrate that further discovery would have led to evidence which would have precluded summary judgment based on causation.[9]
 
 II. Orders Prior to Summary Judgment
 
 35
 Avirgan and Honey also contend that the district court erred in the issuance of orders prior to summary judgment which restricted discovery and denied them the right to file a third amended complaint. We review these claims under an abuse of discretion standard. Edward Leasing Corp. v. Uhlig and Associates, Inc., 785 F.2d 877 (11th Cir.1986).
 
 A. Discovery Limitations
 
 36
 Avirgan and Honey contend that the district court's order restricting discovery to evidence for the period 1983 through 1986 of only one venture of the alleged RICO enterprise, and only those subjects related to the La Penca bombing, deprived them of an opportunity to conduct adequate discovery.
 
 
 37
 Despite these assertions, prior to filing the first complaint, Avirgan and Honey boasted of a two-year investigative period, and after filing enjoyed an additional two years of discovery. Where a significant amount of discovery has been obtained, and it appears that further discovery would not be helpful in resolving the issues, a request for further discovery is properly denied. Aviation Specialties, Inc. v. United Technologies Corp., 568 F.2d 1186, 1189 (5th Cir.1978).
 
 
 38
 Thus, the time and subject matter restrictions imposed by the district court did not deprive Avirgan and Honey of an opportunity to conduct adequate discovery. Moreover, the order did not prohibit discovery into causation, which was the dispositive issue. The district court has wide discretion in determining the scope and effect of discovery, and it did not abuse its discretion when it imposed time and subject matter restrictions in this case. See Amey, Inc. v. Gulf Abstract and Title, Inc., 758 F.2d 1486, 1505 (11th Cir.1985), cert. denied, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).
 
 B. Third Amended Complaint
 
 39
 Avirgan and Honey also challenge the district court's denial of their motion to file a third amended complaint. Avirgan and Honey acknowledge that the third amended complaint would not have altered the claims against the appellees or added new parties, causes of action, or additional relief. Consequently, a third amended complaint was unnecessary. Avirgan and Honey needed proof, not more pleadings. The district court did not abuse its discretion in denying the filing of a third amended complaint.
 
 III. Attorneys' Fees
 
 40
 In its order awarding costs and attorneys' fees, the district court stated:
 
 
 41
 The attorneys for the plaintiffs, The Christic Institute, must have known prior to suing that they had no competent evidence to substantiate the theories alleged in their complaint. Plaintiffs' lead counsel, Daniel Sheehan, supplemented the complaint with a detailed affidavit outlining the purported testimony of seventy-nine witnesses who Mr. Sheehan stated had factual knowledge that these defendants set and exploded the bomb that caused plaintiff's injuries.
 
 
 42
 The seventy-nine witnesses were identified only by number. Plaintiffs' counsel refused to identify the names and addresses of the vast majority of the seventy-nine witnesses until ordered to do so by the court. Plaintiffs appealed the order requiring them to disclose the identities of the witnesses. These actions by plaintiffs and their counsel prevented the defendants from taking depositions of these witnesses, and delayed orderly discovery for many months.
 
 
 43
 After all the appeals were exhausted and plaintiffs complied with the order to reveal the names of their witnesses, the reason for the plaintiffs' adamant refusal became apparent. Specifically, the names and identities of approximately twenty of the seventy-nine witnesses were totally unknown to Mr. Sheehan or the plaintiffs. Several of the disclosed witnesses later stated under oath that they did not know Mr. Sheehan, had never spoken to him, or flatly denied the statements he had attributed to them in his affidavit. The remaining witnesses did not furnish any statements that would be admissible. Much of the testimony of these witnesses involved conversations they allegedly had with other people, which is the hearsay testimony inadmissible at a trial.
 
 
 44
 Avirgan v. Hull, 705 F.Supp. 1544, 1545 (S.D.Fla.1989). Avirgan and Honey do not dispute the district court's statements. The other appellants, in the fee portion of the case, do not dispute the statements.
 
 
 45
 The district court awarded costs to the appellees pursuant to Federal Rule of Civil Procedure 54(d), and 28 U.S.C. Sec. 1920, which lists the items that may be reimbursed as costs.[10] Avirgan and Honey argue that what the attorneys "must have known" is not the proper standard for the grant of attorneys' fees, but is the standard for the imposition of sanctions. Thus, in their opinion, the district court impermissibly "guised its Rule 11 sanctions as a grant of summary judgment."
 
 
 46
 Sheehan could not have reasonably believed at the time of the filing of the complaint and the signing of the affidavit that the complaint was well-grounded in fact.[11] Particularly is this true of the affidavit with its unknown, nonexistent, deceased sources, its fabricated testimony, and the deceptive style used to mask its shortcomings. It is obvious that if the appellants knew (must have known) prior to filing this lawsuit that they had no competent evidence, then, this complaint was not well-grounded. Additionally, the district court stated in its order granting attorney's fees and costs that Sheehan's affidavit was the impetus for the two years of discovery. Yet, this discovery did not yield any witnesses who could link the alleged criminal enterprise to the bombing.
 
 
 47
 In its clarification order, the district court explained that Daniel Sheehan, as lead counsel, and the Christic Institute, as the official law firm, were liable pursuant to the bad-faith exception, 28 U.S.C. Sec. 1927, and Federal Rule of Civil Procedure 11, while Avirgan and Honey, as willful participants in Sheehan's litigation strategy, were liable under the bad-faith exception.[12] 125 F.R.D. 189. A court may assess attorney's fees against litigants, counsel, and law firms who willfully abuse judicial process by conduct tantamount to bad faith. Roadway Express Inc. v. Piper, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). On this record, we have no difficulty in finding that these appellants unreasonably and vexatiously multiplied these proceedings.[13] It is well established that:
 
 
 48
 Although a litigant proceeding in good faith has a right to use civil discovery in attempts to prove the existence of a colorable claim for relief, filing a lawsuit is not a gratuitous license to conduct infinite forays in search of evidence. When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest.
 
 
 49
 Collins v. Walden, 834 F.2d 961, 965 (11th Cir.1987). Since Sheehan, the Christic Institute, Avirgan, and Honey chose not to abandon this case, the district court properly awarded attorney's fees and costs to the appellees.
 
 
 50
 Furthermore, the district court's order does not infringe upon the appellants' right of access to the courts, or first amendment rights of free association, or Sheehan's professional obligation to represent clients zealously. Status as a public interest law firm or the nature of a claim does not confer immunity from attorneys' fees for bringing and maintaining frivolous lawsuits. See Roadway Express, 447 U.S. at 762, 100 S.Ct. at 2462; Oliveri v. Thompson, 803 F.2d 1265, 1280 (2d Cir.1986). Accordingly, we affirm the district court's award of attorney's fees and costs.
 
 CONCLUSION
 
 51
 Accordingly, we affirm the judgments of the district court.
 
 
 52
 AFFIRMED.
 
 
 
 [1]
 The status of persons involved in these cases is as shown below:
 Appellants: Tony Avirgan (plaintiff), Martha Honey (plaintiff), The Christic Institute, and Daniel P. Sheehan.
 Appellees: John Hull, Moises Dagaberto Nunez, Jorge Gonzalez, Adolfo Calero, Robert W. Owen, John K. Singlaub, Ronald Joseph Martin, Sr., James McCoy, Thomas Posey, Rafael Quintero, Mario Delamico, Thomas Clines, Theodore Shackley, Albert Hakim, and Richard Secord.
 Defendants only: Bruce Jones, Rene Corbo, Francisco Chanes, Ricardo Gris, William Gris, Robert P. Pallais, Hector Cornillot, and Fredrico Saenz.
 Named as defendants but not served: Felipe Vidal Santiago, Ramon Cecilio Palacio, Amac Galil, Alvaro Cruz, Pablo Escobar, and Jorge Ochoa.
 
 
 [2]
 Avirgan and Honey do not challenge the grant of summary judgment on the state law claims. As such, we deem those claims abandoned. Rogero v. Noone, 704 F.2d 518, 529 n. 1 (11th Cir.1983)
 
 
 [3]
 The Christic Institute is a tax-exempt law firm which funded the litigation
 
 
 [4]
 The appeal on the merits is 88-5720; the other three appeals are from the district court's orders on fees (89-5143, 89-5232, and 89-5515)
 On appeal, numerous persons and entities appeared, through brief, as amicus curiae, including: Church of the Brethren, Church Women United, Conference of Major Superiors of Men, Peace Fellowship of the Christian Church (Disciples of Christ), Leadership Conference of Women Religious, the Maryknoll Fathers and Brothers, General Conference Mennonite Church, National Council of Churches of Christ in the U.S.A., Unitarian Universalist Association, the Womens Division of the United Methodist Board of Global Ministries; Professor Melissa Nelken, Professor Carl Tobias, Professor Mary Twitchell, Trial Lawyers for Public Justice, and Public Citizen and Alliance for Justice.
 
 
 [5]
 Avirgan and Honey also request damages for injuries and ask that if the case is remanded for further proceedings, the proceeding not be conducted by Chief Judge James L. King. Since we affirm the district court, these issues are moot
 
 
 [6]
 Title 18 U.S.C. Sec. 1964(c) reads as follows:
 Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.
 
 
 [7]
 At one point, Avirgan and Honey argue that Theodore Shackley's counsel admitted Galil's existence. Shackley's counsel's statement was, "I don't believe that the plaintiffs have any proof that any of the defendants was engaged in the La Penca bombing or connected to the La Penca bombing other than this fellow that they describe as Amac Galil." This statement is not evidence that counsel admitted Galil's alleged role in the bombing
 
 
 [8]
 The following persons filed motions for summary judgment: Jones, Owen, Hull, Calero, Singlaub, Shackley, Martin, McCoy, Quintero, Delamico, Clines, Hakim, and Secord. Gonzalez filed an untimely summary judgment motion
 Defendants Santiago, Palacio, Galil, Cruz, Escobar, and Ochoa, were never served and were dismissed.
 Nine defendants did not move for summary judgment: Corbo, Nunez, Chanes, R. Gris, W. Gris, Pallais, Cornillot, Saenz, and Posey. Nunez moved, after the pretrial conference, to vacate the entry of default against him and to quash the service of process.
 
 
 [9]
 Avirgan and Honey had two years to conduct discovery and seven and one-half months advance warning of the discovery cut-off date. Knowing this, they took absolutely no discovery during the first nine months after filing the case and little more until January, 1988. During the final 4 1/2 months of discovery, Avirgan and Honey filed 153 deposition notices. It is clear that Avirgan and Honey's actions caused delay in discovery, not the appellees
 
 
 [10]
 Federal Rule of Civil Procedure 54(d) provides in pertinent part:
 Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs.
 Title 28 U.S.C. Sec. 1920 provides:
 Taxation of costs
 A judge or clerk of any court of the United States may tax as costs the following:
 (1) Fees of the clerk and marshal;
 (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
 (3) Fees and disbursements for printing and witnesses;
 (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
 (5) Docket fees under section 1923 of this title;
 (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
 
 
 [11]
 Federal Rule of Civil Procedure 11, in pertinent part provides:
 The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
 
 
 [12]
 Title 28 U.S.C. Sec. 1927 provides:
 Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.
 
 
 [13]
 At oral argument, appellants admitted they had spent more than $2 million on this case although, under the best scenario, they did not expect to collect half that amount